475 A.2d 730

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Leslie C.X. BEASLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1983.

Decided April 18, 1984.

486

488

Thomas J. Turner, III, Philadelphia (court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Steven Cooperstein, Asst. Dist. Attys., Philadelphia, Marion E. MacIntyre, Deputy Atty. Gen., for appellee.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The appellant, Leslie C.X. Beasley, was convicted of murder of the first degree, and sentenced to death, in connection with an incident in 1980 in which a police officer was shot to death at a restaurant in Philadelphia. The officer had gone to the restaurant in response to a radio dispatch alerting him that a man with a gun was present there. Upon arriving at the restaurant, the officer was fatally wounded by the appellant. Pursuant to 42 Pa.C.S.A. § 9711(h), we are called upon to review the record for errors at trial,[1] and to determine whether the sentence of death should be affirmed or vacated.

## I. TRIAL ERRORS

Appellant's primary allegation is that the trial court erred in refusing to grant a mistrial when the prosecutor, during cross-examination of the only fact witness presented by the defense, discredited the veracity of the witness. Examination of the circumstances under which the discrediting comments were made, however, reveals that the comments did not warrant the grant of a new trial.

The witness in question testified that on the night of the shooting, he, appellant, and another man named "Church" were present at the restaurant, and that it was "Church" rather than appellant who shot the police officer. On cross-examination, the witness testified that after the shoot-

---

**1.** In accordance with our duty under 42 Pa.C.S.A. § 9711(h), we have examined the trial record for errors in addition to those alleged by appellant, but none have come to our attention that could warrant relief.

ing incident he went to Georgia, where he was convicted for committing a series of robberies, for which he was sentenced to twenty years imprisonment. The following exchange then occurred.

PROSECUTOR: And that was the one for which you were sentenced for 20 years?

WITNESS: That's the one that you told me that if I would testify against Mr. Beasley that you would help me out on the 20 years and I told you I wasn't going to do that.

PROSECUTOR: You're talking to me?

WITNESS: Yes.

PROSECUTOR: You say that I said that, sir?

WITNESS: Yes, sir.

PROSECUTOR: [Y]ou know that very well is an outright lie.

DEFENSE COUNSEL: I object to [the prosecutor's] statement, testimony, and I move for a mistrial ... you have intentional prosecutorial misconduct.

THE COURT: Just a minute.

. . . .

PROSECUTOR: Because I never talked to you.

THE COURT: [Prosecutor], just a minute. Please, sit down, and control yourself, will you?

You will disregard the [prosecutor's] last statement. Motion for mistrial is denied.

Now, calm down.

. . . .

PROSECUTOR: [W]hen have I talked to you? Mention one? When did I speak to you? When did I ever speak to you?

WITNESS: You spoke to me quite a few times.

PROSECUTOR: How many times....?

WITNESS: Well, you was upstairs one day talking to me about helping me out with the 20 years if I said Mr. Beasley killed the police officer. The same when you were talking to other people that was there.

PROSECUTOR: I'm talking about how many times—You say that was one time I came to you? Was I alone or with someone else?

WITNESS: You were by yourself.

PROSECUTOR: No one else that you can bring? Do you want me out of this case; is that what you're trying to do?

DEFENSE COUNSEL: I object to that statement and I move for a mistrial.

PROSECUTOR: Your honor, I will state this as an absolute fact. I have never seen him before. I've never seen this man before.

THE COURT: Just a minute. All right. Just a minute.

PROSECUTOR: Except at the preliminary hearing.

THE COURT: Just a minute. Now, please. Gentlemen, will you shut-up a minute? Will you? Please. Now, everybody sit down and keep quiet. Please. This is not a circus. Gentlemen, there are ways of doing this and let's do it the proper way. I don't like to be angry.

PROSECUTOR: Yes, sir.

. . . .

THE COURT: (To the witness) You just answer questions.

THE COURT: (To the [prosecutor]) You just ask questions. No side comments, okay?

DEFENSE COUNSEL: Your Honor—

THE COURT: The motion for a mistrial is denied. The jury will disregard all of the last outburst.

. . . .

PROSECUTOR: How was I going to do that?

WITNESS: You told me you had connections with the D.A.'s office down there and you could possibly give— you know, get me a lesser sentence if I would help you out. And I told you I wasn't going to lie.

PROSECUTOR: And you're going to—you're saying that with a straight face, aren't you?

DEFENSE COUNSEL: I object to the comments, Judge. [Defense counsel did not, in response to this last prosecutorial comment, make another motion for a mistrial.]

Clearly, as a general rule, it is improper for a prosecutor to express his personal belief as to the credibility of a witness. *Commonwealth v. Kuebler*, 484 Pa. 358, 363–364, 399 A.2d 116, 118–119 (1979); *Commonwealth v. Potter*, 445 Pa. 284, 286–287, 285 A.2d 492, 493 (1971). Not every unwise or unwarranted remark made by counsel during the course of a trial, however, warrants the grant of a new trial. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975); *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973). It is axiomatic that "comments by the Commonwealth's attorney do not constitute reversible error unless the 'unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.' *Commonwealth v. Van Cliff,* 483 Pa. 576, 582, 397 A.2d 1173, 1176 (1979) (citations omitted)." *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208, 211 (1983). Viewed in context, the instant prosecutorial comments could not have so prejudiced the jury as to have interfered with attainment of a true verdict.

The witness's assertion that the prosecutor had offered him a deal in exchange for testimony against appellant was not responsive to any question posed by the prosecutor. The testimony was, in fact, a direct attack upon the integrity of the prosecutor which produced an emotional reaction, consisting of a denial of the witness's accusation, under circumstances where the prosecutor would no doubt have felt that remaining silent in the face of such an accusation would be construed by the jury as an admission of its truth.

Of great significance is the fact that the prosecutor's comments did not relate to the substance of the witness's primary testimony, namely the witness's assertion that "Church", rather than appellant, shot the police officer. Hence, the prosecutor's comments related *solely* to the

witness's veracity as to a purely collateral matter, i.e., the prosecutor's prior communications with the witness.

The risk of prejudice was further vitiated by the trial court's prompt responses, whereby the court on two occasions during cross-examination of the witness instructed the jury to disregard the comments in question. *Commonwealth v. Brightwell*, 479 Pa. 541, 545, 388 A.2d 1063, 1065 (1978) (improper prosecutorial questions cured by prompt cautionary instruction); *Commonwealth v. Martinolich*, 456 Pa. 136, 149, 318 A.2d 680, 687–688 (1974) (prompt instruction cured improper remark of prosecutor). The following day, the court consulted with counsel about this matter to determine whether additional cautionary instructions were desired. Defense counsel objected to any further instructions being given at that time, but suggested that the matter could be addressed in final instructions. Accordingly, during final instructions, the court cautioned the jury as follows:

It is part of the function of the jury to decide the credibility of the witnesses. You are the triers of the facts. No one, including the attorneys and myself as judge, have a right to usurp your authority to determine credibility of witnesses that you have seen as to who is or who is not telling the truth.

If you find that anyone has given his personal views as to the truth or falsehood of any witnesses, you're not to be influenced by his personal viewpoint.

In addition, the effect of the prosecutor's remarks should be evaluated within the context of the entire trial. See *Commonwealth v. Byrd*, 490 Pa. 544, 559, 417 A.2d 173, 181 (1980). The instant exchange between prosecutor and defense witness was an isolated incident in the course of a trial which spanned nearly seven days, and no further mention of the exchange occurred during the remainder of the trial. More significant, however, is the fact that the Commonwealth's evidence against appellant was so overwhelming, and the testimony of the defense fact witness in question so weak, that the impact of the prosecutor's re-

marks was necessarily *de minimis.* Cf. *Commonwealth v. Norris,* 498 Pa. 308, 317–318, 446 A.2d 246, 250–251 (1982); *Commonwealth v. Story,* 476 Pa. 391, 410, 383 A.2d 155, 164–165 (1978).

The Commonwealth presented the testimony of three eyewitnesses who saw appellant shoot the police officer. In addition, appellant's possession of the murder weapon just moments before the shooting was established, as were his flight after the shooting and possession of and attempt to discard the murder weapon at the end of that flight.[2]

The testimony of the defense fact witness in question, however, cannot be regarded as having been of significant, or perhaps any, value to the defense, and this fact would remain unchanged even if the comments of the prosecutor had not been made. In his testimony, the witness admitted to having been convicted of a number of crimes in the past, including a series of robberies in Georgia for which he was sentenced to twenty years imprisonment. Further, he admitted to having taken narcotics just prior to the shooting incident. His testimony that "Church," rather than appellant, committed the shooting was impeached with a statement he gave to police on the night of the crime in which he denied seeing who shot the police officer. Incredibly, however, the witness testified that the statement was entirely fabricated by the police, *except* for one sentence. That sentence was one in which the witness concededly told the police, "I don't like cops, ... I told him [the fatally wounded officer], mother fucker, I hope you die."

Thus, the prosecutor's remarks having been confined to a collateral issue, rather than being directed at the substance of the witness's primary testimony, and the risk of prejudice having been countered by prompt cautionary instructions to the jury, and the Commonwealth's case having been of overwhelming strength while the witness in question's

2. Viewing the evidence, as we must, in the light most favorable to the Commonwealth, *Commonwealth v. Keblitis,* 500 Pa. 321, 456 A.2d 149, 150 (1983), we find this evidence more than ample to sustain the jury's verdict of guilt.

testimony was of little value to the defense, we believe that the trial court's denial of a motion for mistrial was not error.

Appellant's second contention is that he is entitled to a new trial because the prosecutor allegedly made use of leading questions on thirty-two occasions while conducting direct examination of the Commonwealth's witnesses, and that the prosecutor repeated, on eight occasions, small portions of testimony while phrasing questions during direct examination. Nevertheless, the extent to which a court tolerates leading questions, or suggests how questions asked by counsel should be rephrased, are matters within the discretion of the trial court and will not be reversed in the absence of a clear abuse of discretion. *Commonwealth v. Jones*, 487 Pa. 183, 185, 409 A.2d 25, 26–27 (1979); *Commonwealth v. Gockley*, 411 Pa. 437, 455, 192 A.2d 693, 702 (1963). We have examined the record, but find no pattern of abuse in the phraseology of the prosecutor's questions to witnesses. In fact, most of defense counsel's objections to supposedly leading questions were overruled, and appellant has offered no argument as to why those rulings might be erroneous. Appellant was not prejudiced by the prosecutor's style of phrasing questions, and no abuse of the trial court's discretion is perceived.

The third claim of error raised by appellant is that the prosecutor made improper comments during opening and closing arguments, such comments being directed at what appellant may have been thinking during and immediately after commission of the crime. It is well established, however, that a prosecutor may argue all reasonable inferences that may be derived from the evidence. *Commonwealth v. Glass*, 486 Pa. 334, 345, 405 A.2d 1236, 1241 (1979); *Commonwealth v. Lipscomb*, 455 Pa. 525, 529 n. 3, 317 A.2d 205, 207 n. 3 (1974). Examination of the challenged remarks reveals that they contained only legitimate inferences as to appellant's motives for committing the shooting and for fleeing from the crime scene.

Thus, in his opening argument, while discussing evidence to be presented regarding events leading up to the shooting, the prosecutor inferred the following about appellant's state of mind:

"[T]his defendant knows that he's in big trouble if he's caught with a gun ... He then reaches for the gun and being worried about being caught with that ... He did know that he did threaten [a patron of the restaurant] ... All he knows is a police officer shortly thereafter is coming towards him ... [H]e pulls out the weapon ... And he holds that weapon steadily and fires."

Clearly, this statement was proper, for the prosecutor merely asserted that the motive for the shooting was appellant's desire not to be discovered with a gun in his possession. The Commonwealth's evidence did supply the basis upon which this argument was founded, for it demonstrated that appellant was in possession of a gun when approached by the police officer at the restaurant, that appellant had previously threatened a patron, and that, when approached, appellant fatally shot the police officer.

Appellant next cites a portion of the opening statement in which, after describing the shooting incident and appellant's desire not to be arrested, the prosecutor stated, "Beasley then decides that he's got to go." Here, the prosecutor simply stated the obvious fact that, after the shooting, appellant made a decision to flee. The Commonwealth's evidence showed that appellant did in fact flee immediately after the shooting, and, hence, the prosecutor's statement was beyond reproach.

In his closing argument, the prosecutor argued as follows to advance an explanation as to why appellant did not shoot at an additional police officer who pursued him for purposes of arrest after the shooting incident, "He didn't shoot him because the weapon was empty ... He didn't shoot him because he saw it was empty at the time...." We reject the assertion that this statement constituted unfounded speculation as to appellant's thought processes, for it is plainly a legitimate inference as to appellant's motive for

conducting his flight in the manner shown by the Commonwealth's evidence. The evidence indeed established that appellant's gun contained, at the relevant time during flight, no more live ammunition; only spent shell casings then remained.

The next portion of the closing argument alleged to have been prejudicial was that in which, during a discussion of appellant's abandonment of weapons at the end of his flight, the prosecutor inferred that appellant's actions were attributable to consciousness of guilt, stating, "And from that moment, what's in his mind? This is an individual who knows that the shooting has just occurred. That he has done it. That he is being pursued and they're up to him. What is he going to do? Get rid of the weapons." Again, appellant's flight and abandonment of the weapons were firmly established by the Commonwealth's evidence, and this portion of the closing argument merely advanced a reasonable inference as to appellant's motive for abandoning his guns.

The final portion of the closing remarks challenged by appellant is that in which the prosecutor inferred that a glove had been discarded by appellant in the back of a police van after the arrest because the glove was one that, had appellant had time to don it prior to shooting a weapon, he would have worn as protection for his hand. The glove was established by the Commonwealth's evidence to have been seen in appellant's rear pocket at the time of arrest, and was later found hidden underneath the seat of the van in which appellant was transported to the police station. Inasmuch as the arrest occurred on a night in the month of July, when appellant would not have been carrying a glove as a precaution against inclement weather, the prosecutor's inference as to the purpose of the glove was not unreasonable. In summary, therefore, we find no merit in any of appellant's allegations that opening and closing remarks by the prosecutor exceeded permissible bounds of argument.

## II. DEATH PENALTY

■ Appellant raises a number of constitutional challenges to the death penalty statute, 42 Pa.C.S.A. § 9711, including assertions that the statute unconstitutionally 1.) restricts the mitigating circumstances that a jury may consider in determining whether a sentence of death is mandated, 2.) places upon the defendant the burden of proving mitigating circumstances, 3.) fails to provide an express standard to be applied in weighing mitigating factors against aggravating factors, and 4.) imposes a cruel punishment prohibited by Article I, Section 13 of the Pennsylvania Constitution. These assertions do not warrant further discussion, for each has recently been considered and rejected by this Court in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 958–969 (1982), *cert. den.* —— U.S. ——, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

■ Appellant further contends that certain language employed in the statute's enumeration of aggravating and mitigating circumstances, to be weighed by the jury in determining whether the death penalty should be imposed, are so vague as to invite arbitrary and capricious imposition of the death penalty. The challenged language includes, *inter alia,* the phrases "significant history of prior criminal convictions" (42 Pa.C.S.A. § 9711(e)(1)), "extreme mental or emotional disturbance" (42 Pa.C.S.A. § 9711(e)(2)), "age of the defendant" (42 Pa.C.S.A. § 9711(e)(4)), "participation in the homicidal act was relatively minor" (42 Pa.C.S.A. § 9711(e)(7)), "capacity of the defendant ... to conform his conduct to the requirements of law...." (42 Pa.C.S.A. § 9711(e)(3)). In reviewing an identical claim of vagueness asserted against the corresponding portion of the death penalty statute of the State of Florida, which employed virtually identical language, the Supreme Court of the United States rejected the vagueness claim, noting that a jury's evaluation of the aggravating and mitigating circumstances, as enumerated, requires no more line drawing than is commonly required of a factfinder in any lawsuit. *Proffitt*

*v. Florida,* 428 U.S. 242, 257, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913, 925–926 (1976). We agree.

■ It is next alleged that the death penalty statute is unconstitutionally applied where the trial court charges the jury on voluntary manslaughter when there is no evidence that would support such a verdict. This contention is without merit. *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984).

■ Appellant next asserts that the trial court's charge to the jury on the death penalty was incomplete and unclear in that it did not instruct as to which aggravating and mitigating circumstances were to be considered in this case, and that trial counsel was ineffective for failing to request an adequate charge. Examination of the record reveals, however, that the trial court read to the jury the entire statutory list of aggravating and mitigating circumstances, 42 Pa.C.S.A. § 9711(d), (e). Although the court did not elaborate as to which of the ones listed might apply in this case, we do not believe the jury could have been confused by the mere fact that the listing of such circumstances was, therefore, more extensive than was necessary. In connection with this claim, appellant argues that there is no record of what circumstances the jury found, and, thus, that there can be no meaningful review of whether the jury understood the instruction. This contention is plainly erroneous. The record *does* contain a verdict sheet upon which the jury clearly indicated that it found two aggravating circumstances and no mitigating circumstances. Such findings are supported by the evidence, and demonstrate the jury's clear understanding of the instruction in question. Since the instruction was in fact adequate, counsel cannot be deemed ineffective for failing to request an adequate charge.

■ One of the aggravating circumstances found by the jury was that the victim was a peace officer who was killed in the performance of his duties, 42 Pa.C.S.A. § 9711(d)(1). Appellant concedes that this was proved at trial beyond a

reasonable doubt, as is the requisite burden of proof upon the Commonwealth when establishing the existence of aggravating circumstances, 42 Pa.C.S.A. § 9711(c)(1)(iii). Nevertheless, appellant asserts that the verdict of death was not adequately supported by the evidence. The death penalty statute provides that if the jury finds at least *one* aggravating circumstance and no mitigating circumstances, then the verdict *must* be death. 42 Pa.C.S.A. § 9711(c)(1)(iv). Because the jury found at least one proper aggravating circumstance, viz. the killing of an on-duty police officer, and no mitigating circumstances, appellant's sentence of death was not only supported by the evidence, but was *required*.[3]

This Court has recognized a duty to conduct a proportionality review in cases where a death sentence has been imposed, to determine whether the sentence of death is excessive or disproportionate to the circumstances, taking into account all similar cases, and considering both the circumstances of the crime and the character and record of the defendant. *Commonwealth v. Zettlemoyer*, 500 Pa. at 62–63, 454 A.2d at 961; *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983). In a case such as the present one, where there is no evidence of mitigating circumstances but there is present the aggravating circumstance of the victim having been a police officer, the death penalty is not imposed as a result of the jury's weighing of aggravating and mitigating circumstances. Rather, the jury has no discretion as to the sentence, for the verdict of death is required, and, thus, all similarly situated defendants should, of necessity, receive the same sentence. 42 Pa.C.S.A. § 9711(c)(1)(iv). We have reviewed the Pennsylvania Death

---

3. We note that the jury also found that a second aggravating circumstance was present, namely that appellant "has a significant history of felony convictions involving the use or threat of violence to the person," 42 Pa.C.S.A. § 9711(d)(9), based upon the fact that appellant concededly was convicted of murder once before, in 1972, for having shot to death a man in New Jersey. The presence of, and correctness of, a jury's finding of a second aggravating circumstance is not relevant in a case such as this where there have been found no mitigating circumstances, since one aggravating circumstance alone requires a verdict of death.

Penalty Study conducted by the Administrative Office of Pennsylvania Courts [4] and find, based upon the available data, no conviction in which the death penalty was not sought and obtained by the prosecution where there were present the same aggravating circumstances, and lack of any mitigating circumstances, as in the present case. Appellant's sentence, therefore, is not disportionate to those of other similarly situated defendants.

The final contention of trial court error is that the presentation of certain evidence of mitigating circumstances was improperly restricted when there was sustained a prosecutorial objection to one question posed to a defense witness at the penalty proceeding. The sole witness offered by the defense at the penalty proceeding was appellant's mother, Ethel Beasley. Mrs. Beasley testified that appellant was, at the time of trial, twenty-nine years old, and that at an unspecified time in the past he had received treatment at a psychiatric hospital. Counsel then asked Mrs. Beasley why appellant received treatment, whereupon an objection by the prosecutor was sustained. After a sidebar conference, however, Mrs. Beasley *was permitted to testify*, without objection, that appellant received treatment because he drank excessively, to the point of blacking out. Defense counsel then asked the following question: "And when he blacked out, sometimes he wouldn't know what happened for days at a time?" Mrs. Beasley answered with a "no," but the prosecutor objected, and the objection was sustained. The Commonwealth contends that this question was properly excluded, taking the position that the question was leading, that it called for an answer that could have been based only on hearsay, and that the question was proper only for a medical expert to answer.

 Nevertheless, on cross-examination, Mrs. Beasley admitted that the treatment in question had been adminis-

---

4. The Pennsylvania Death Penalty Study reviewed the sentences sought and obtained in all convictions for murder of the first degree between the effective date of the relevant sentencing procedures, September 13, 1978, and February, 1984. See *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984).

tered to appellant twelve years before, in 1969, when appellant would have been only seventeen years of age. We do not regard the excluded testimony, which related only to the duration of childhood alcoholic blackouts suffered by appellant so many years previous, as having been evidence of mitigation relevant to the present offense. Appellant was not, therefore, denied the opportunity to present evidence of mitigation.

Judgment of sentence affirmed.

ROBERTS, Former Chief Justice, did not participate in the decision of this case.

NIX, C.J., did not participate in the consideration or decision of this case.