No. 84–5350.   MAXWELL *v.* PENNSYLVANIA.   Sup. Ct. Pa. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

I would grant certiorari to consider the constitutionality of the Pennsylvania death penalty statute, under which the jury must impose a death sentence upon a finding of one aggravating circumstance and no mitigating circumstances.  Such a scheme precludes any individualized consideration that "'death is the appropriate punishment in a specific case,'" *Lockett* v. *Ohio*, 438 U. S. 586, 601 (1978) (plurality opinion), quoting *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.), virtually eliminates the possibility of a mercy verdict, and absolves the jury from the obligation of taking moral responsibility for its actions.

### I

Maxwell was convicted of first-degree murder, a crime punishable by death in Pennsylvania.  At the sentencing hearing, the

State presented evidence of two aggravating circumstances. Maxwell did not present any evidence of mitigating circumstances, and the jury failed to find mitigating circumstances. 505 Pa. 152, 477 A. 2d 1309 (1984). Maxwell's counsel, however, made a plea for mercy.

Under the Pennsylvania death penalty statute, "the verdict *must* be a sentence of death if the jury unanimously finds at least one aggravating circumstance . . . and *no* mitigating circumstance . . . ." 42 Pa. Cons. Stat. § 9711(c)(1)(iv) (1980) (emphasis added). The trial judge's instruction to the jury paraphrased the language of the statute.

In construing the statute, the Pennsylvania Supreme Court has stated that where no mitigating circumstances are found, "one aggravating circumstance alone *requires* a verdict of death." *Commonwealth* v. *Beasley*, 504 Pa. 485, 500, n. 3, 475 A. 2d 730, 738, n. 3 (1984) (emphasis added). Indeed, in considering Maxwell's appeal, that court stated that because Maxwell "did not introduce any evidence of mitigating circumstances, it became unnecessary to 'weigh' opposing circumstances." 505 Pa., at 168, 477 A. 2d, at 1317–1318.

## II

I am troubled by Pennsylvania's mechanical imposition of the death penalty. Under the Pennsylvania death penalty statute, once the jury fails to find mitigating circumstances, it is precluded from making any further inquiry. At that point, in returning its verdict—the most serious judgment that our society can render— the jury acts in a merely ministerial capacity. The legislature and the courts have barred independent decisionmaking.

The Pennsylvania statute, as interpreted by the State's courts, raises two substantial questions that are worthy of this Court's attention. The first is whether placing such severe constraints on the jury is consistent with the requirement of individualized punishment in capital cases. See *Lockett* v. *Ohio*, *supra*, at 601. The problem posed by the "mandatory" aspect of death penalty schemes in which the jury must return a death sentence without considering the appropriateness of such a sentence was discussed by JUSTICE STEVENS in *Smith* v. *North Carolina*, 459 U. S. 1056 (1982) (respecting denial of certiorari). In *Smith*, the jury was required to make three findings:

"(1) that one or more aggravating circumstances existed; (2) that the aggravating circumstances were sufficiently substantial to call for the death penalty; and (3) that the aggravating circumstances outweighed the mitigating circumstances." *Ibid.*

JUSTICE STEVENS' concern was that a North Carolina jury might answer the second and third questions in the affirmative and yet be in doubt about the proper penalty. Under the Pennsylvania statute at issue here, the jury not only makes no determination on the propriety of the death sentence but is also denied the opportunity to rule on the second question, since the legislature has already made that decision. Thus, the jury's findings here are even further removed from the question whether death is the appropriate punishment.

More importantly, this issue is squarely presented in this case, whereas it was not in *Smith.* In *Smith,* the jury instructions could have been read "as merely requiring that the death penalty be imposed whenever the aggravating circumstances, discounted by whatever mitigating factors exist, are sufficiently serious to warrant the extreme penalty." *Id.,* at 1056–1057. Under this reading, of course, the instructions would have complied with the *Lockett* requirement of an individualized determination of the appropriateness of the death penalty. JUSTICE STEVENS thus concluded that the Court should not examine the constitutionality of the statute until this statute had been authoritatively construed by the North Carolina courts. Here, in contrast, the Pennsylvania Supreme Court has expressly foreclosed any reading that would make the statute consistent with *Lockett.*

These severe limitations on the role of the jury take on crucial significance in light of the fact that Maxwell's sole strategy at his sentencing hearing was to present a plea for mercy. This Court has stated that it is constitutionally permissible for the jury "to dispense mercy on the basis of factors too intangible to write into a statute." *Gregg* v. *Georgia,* 428 U. S. 153, 222 (1976) (WHITE, J., concurring in judgment); see *Zant* v. *Stephens,* 462 U. S. 862, 875–876, n. 13 (1983). And *Lockett* v. *Ohio* suggests that the possibility of a mercy verdict—a verdict based on unarticulated and perhaps unarticulable reasons—cannot be constitutionally foreclosed, for otherwise there would be no assurance that the death penalty was not imposed "in spite of factors which may call for a

less severe penalty." 438 U. S., at 605. But here, the jury was expressly not given any opportunity to consider whether death was proper. Thus, in order to consider Maxwell's mercy plea the jury would have had to categorize it as one of eight mitigating circumstances. It seems to me that even the broadest mitigating circumstance in the Pennsylvania statute—"the character and record of the defendant and the circumstances of his offense," 42 Pa. Cons. Stat. § 9711(e)(8) (1980)—is too restrictive to allow proper consideration of intangible factors.

This problem is magnified here because the absence of mitigating circumstances ended the jury's inquiry. Had the jury balanced aggravating against mitigating circumstances, it would have had another opportunity to take intangibles into account. In addition, at that stage the jury would have been engaged in a more subjective assessment, an assessment perhaps somewhat conducive to the consideration of factors that a juror is persuaded by but cannot articulate. Maxwell's jury never performed this inquiry. For this reason too, the problem here is more serious than that at stake in *Smith*.

### III

My second, related concern is whether Maxwell's streamlined sentencing hearing gave the jury the opportunity to reflect on the magnitude of the decision it was about to make, and to assume moral responsibility for that decision. As far back as in *McGautha* v. *California*, 402 U. S. 183, 207–208 (1971), this Court stressed the importance that "jurors confronted with the truly awesome responsibility of decreeing death for a fellow human will act with due regard for the consequences of their decision." Here, all that the jurors actually did was to consider whether aggravating and mitigating circumstances had been proved. The finding that there was at least one aggravating circumstance and no mitigating circumstances precluded any further inquiry. But findings on questions such as "[t]he age of the defendant at the time of the crime," 42 Pa. Cons. Stat. § 9711(e)(4) (1980), are far removed from what really is at stake in a capital case. I have little faith that a jury told that it is restricted to deciding peripheral issues will ever be aware of, or focus on, the serious consequences of its decision.

The problem here, however, goes beyond a concern that the jury may not take its role seriously enough. Mercy—which I have already identified as a necessary component of capital deci-

sionmaking—cannot be dispensed in a vacuum. It is unlikely that a jury whose inquiry is limited to peripheral factors, far removed from the ultimate question of life or death, will ever turn its attention to whether the exercise of mercy is warranted.

## IV

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia*, *supra*, at 231 (MARSHALL, J., dissenting); *Furman* v. *Georgia*, 408 U. S. 238, 314 (1972) (MARSHALL, J., concurring). The issue in this case, however, is such that I would grant review of the sentence even if I accepted the prevailing view that the death penalty may be constitutionally imposed under certain circumstances. I believe that this Court should consider whether the death penalty may constitutionally be mandated merely upon a finding of the existence of at least one aggravating circumstance and the lack of mitigating circumstances. For that reason, I respectfully dissent.