721 A.2d 786

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ronald ROMPILLA, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 5, 1997.

Decided Dec. 10, 1998.

Reargument Denied Jan. 19, 1999.

380

Billy H. Nolas, Philadelphia, for R. Rompilla, appellant.

Michael P. McIntyre, Allentown, Robert A. Graci, Harrisburg, for the Com., appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

In this capital case, Appellant Ronald Rompilla appeals from the Order of the Lehigh County Court of Common Pleas, which denied his petition for relief under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546. For the reasons set forth below, we affirm.

On November 1, 1988, Appellant was convicted of murdering James Scanlon on January 14, 1988 in Scanlon's bar, the Cozy Corner Cafe, in Allentown, Pennsylvania. Scanlon's son discovered his father's body lying behind the bar in a pool of blood. Scanlon had been stabbed repeatedly and set on fire. His wallet had been stolen and about $500 to $1000 had been stolen from the bar.[1] On November 3, 1988, after a penalty hearing, the jury found three aggravating factors outweighed one mitigating factor and sentenced Appellant to death.[2] This Court affirmed the judgment of sentence on direct appeal. *Commonwealth v. Rompilla*, 539 Pa. 499, 653 A.2d 626 (1995).

Following a stay of execution, on December 5, 1995, Appellant filed a petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. On March 28 and 29, 1996, the PCRA court held hearings on the petition. By Order dated August 21, 1996, the PCRA court denied

1. Appellant was convicted of murder in the first degree, 18 Pa.C.S. § 2502(a); burglary, *id.* § 3502(a); criminal trespass, *id.* § 3503(a)(1)(ii); robbery, *id.* § 3701(a)(1)(i); two counts of theft, *id.* § 3921(a); and two counts of receiving stolen property, *id.* § 3925(a).

2. With respect to aggravating factors, the jury found that Appellant committed a killing in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), that the offense was committed by means of torture, *id.* § 9711(d)(8), and that Appellant has a significant history of felony convictions involving the use or threat of violence, *id.* § 9711(d)(9). The jury found as a mitigating circumstance other evidence of mitigation under 42 Pa.C.S. § 9711(e)(8).

Appellant's petition for relief. Appellant then appealed to this Court. He raises twelve claims.

Appellant first argues that his trial counsel was ineffective in the penalty phase for failing to investigate, develop and present evidence of mitigation related to his childhood up-bringing, alcoholism, mental retardation, cognitive impairment and organic brain defects, which may have caused the jury to impose a life sentence. Appellant specifically maintains that counsel did not obtain records that would have aided the mental health experts who evaluated him, including school records reflecting a low IQ, a hospital record reflecting a fever at age two, and Department of Corrections records reflecting in part low achievement test scores and alcohol abuse. Appellant also argues that counsel failed to learn about Appellant's abusive childhood from his family.

██ To establish a claim of ineffective assistance of counsel under the PCRA, a defendant must show that (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the act or omission in question; and (3) but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Henry*, 550 Pa. 346, 706 A.2d 313, 323 (Pa.1997).[3] At the PCRA hearings, Appellant questioned former trial and appellate counsel about their representation and three of his siblings testified about his childhood. Appellant subsequently submitted depositions of a psychologist and neuropsychologist who evaluated him in 1995 and 1996 respectively. The parties also submitted depositions of the mental health experts who evaluated Appellant in 1988 and the deposition of a psychologist who reviewed Appellant's 1995 and 1996 evaluations.

After the hearings, the PCRA court concluded that Appellant's claim has arguable merit because Appellant was entitled to have relevant information of mental infirmity presented to the jury. However, the court found that counsel had a

3. While the Court is currently considering the stringency of the preju-dice requirement applicable to ineffective assistance claims under the PCRA in *Commonwealth v. Kimball*, No. 38 M.D. Appeal Dkt.1997, as shown below, this requirement is not implicated in this case.

reasonable basis for proceeding as they did. It explained that trial counsel employed two recognized experts in the field of psychiatry and psychology who administered tests, evaluated Appellant, and reported that there was nothing that could be used as mitigation evidence. Rather, the experts told counsel that Appellant was a sociopath. Counsel also obtained an evaluation by another psychiatrist who after evaluating Appellant, found nothing that would be beneficial in the penalty phase. Although counsel did not obtain the records identified above, the PCRA court found them not entirely helpful to Appellant and further found that counsel gave the experts whatever information they requested.

With respect to Appellant's siblings' testimony about his childhood, the PCRA court accepted trial counsel's testimony that when they questioned Appellant and his family before trial, they did not reveal the information that they now claim should have been told to the jury. The court rejected the siblings' testimony to the contrary. The court also stated that Appellant made contradictory statements to counsel during his representation and that counsel was reasonable in believing that their only avenue was to ask the jury to have mercy on him.

■ We agree with the PCRA court that trial counsel was effective with respect to their investigation and presentation of mitigation evidence. In addition to concluding that counsel acted reasonably, we further find that Appellant's claim lacks arguable merit. As recognized by the PCRA court, trial counsel employed three experts to evaluate Appellant. N.T., 3/28/96 at 68–69, 120–21. Based upon their testing, the experts found nothing helpful to Appellant's case and diagnosed him as a sociopath. *Id.* at 122–23. The fact that Appellant now has found two experts who conclude that he has brain damage does not negate the fact that trial counsel investigated Appellant's cognitive abilities with other experts. In addition, we agree with the PCRA court that under the facts of this case, counsel reasonably relied upon their discussions with Appellant and upon their experts to determine the records needed to evaluate his mental health and other potential

mitigating circumstances. *See* N.T., 3/29/96 at 27–28, 33, 38–39. Thus, Appellant's claim that trial counsel failed to investigate his mental health is without arguable merit.

■ With respect to the mitigation evidence brought forth by Appellant's siblings, the PCRA court accepted as credible trial counsels' testimony that when they spoke to the family before trial, none of the family members revealed abuse or other circumstances that could be used as mitigation evidence. *See* N.T., 3/28/96 at 46–51, 109, 118–19, 133, 143; N.T., 3/29/96 at 111. Thus, Appellant's claim that trial counsel failed to investigate his family background also lacks arguable merit.

Related to this claim, Appellant next argues that because trial counsel failed to investigate his background, he received inadequate evaluations by mental health professionals in violation of his constitutional rights. Having found above that trial counsel did not fail to investigate, this claim similarly has no merit.

■ Appellant next argues that the prosecutor's penalty phase summation contained improper argument that violated his right to due process and a fair capital sentencing proceeding. We disagree. A prosecutor's comments do not constitute reversible error unless their unavoidable effect would be to prejudice the jury and form in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true penalty determination. *Commonwealth v. Johnson*, 542 Pa. 384, 404, 668 A.2d 97, 107 (1995). At the penalty phase, the prosecutor has more latitude in presenting argument since the presumption of innocence is no longer applicable. *Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400, 414 (Pa.1997).

In his closing argument, the prosecutor said "[i]t's not easy for me to argue for the death penalty. . . ." N.T., 11/2/88 at 45. The prosecutor also ended his argument by stating "if you don't do it in this case, when are you going to do it? This is the most appropriate case for the death penalty and that's all I'm asking for. . . ." N.T., 11/2/88 at 53. Appellant maintains

that in making these statements, the prosecutor personally vouched for the propriety of imposing the death penalty.

■ Appellant misconstrues the first statement. The prosecutor did not inject a personal opinion that the jury should impose the death penalty but rather stated that it is a difficult penalty to ask for. With respect to his second statement, the prosecutor argued with permissible oratorical flair that the jury should impose a death sentence. *See Commonwealth v. Jones*, 546 Pa. 161, 206, 683 A.2d 1181, 1203 (1996) (statement that "this is just the kind of case that the legislature had in mind [for the imposition of the death penalty]" found proper).

■ In addition, Appellant challenges the following statements by the prosecutor:

[Defense counsel] gave you a very inspired, a very emotional speech and that is her job, there's nothing wrong with that. And what the main touchstone of that speech was mercy ... [B]ut ask yourselves this, ladies and gentlemen of Jury. Did Ronald Rompilla show any mercy to Jimmy Scanlon, any mercy whatsoever? I submit to you, he did not. He did not show one bit of mercy on January 14, 1988.

Did he show Jimmy Scanlon any mercy, any mercy whatsoever? I submit to you, he didn't.

... I'm only asking you to show the same mercy to him that he showed to Jimmy Scanlon.

N.T., 11/2/88 at 47, 49, 50. This Court, however, has held that it is permissible during the penalty phase for a prosecutor to ask the jury to show the defendant the same mercy he showed the victim. *See Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400, 415 (Pa.1997) (rejecting a similar challenge). Thus, no relief is warranted on this claim.

■ Appellant also argues that the prosecutor improperly stated that he killed the victim in order to eliminate any witnesses to his burglary of the bar. *See* N.T., 11/2/88 at 51–52. Appellant asserts that there is no evidence supporting this argument. The Commonwealth concedes that the argu-

ment was not strong given the facts of this case but maintains that it was fair as it related to the aggravating circumstance that the killing took place during the perpetration of a felony. We agree with the Commonwealth that whatever its purpose, the argument did not have the unavoidable effect of prejudicing the jury and forming in their minds fixed bias and hostility towards Appellant so as to prevent them from weighing the evidence and returning a true verdict.

Lastly with respect to prosecutorial misconduct, Appellant maintains that the prosecutor improperly commented upon the victim's family's inability to testify as to their feelings about the victim's death as compared to Appellant's family's ability to share their feelings with the jury. *See* N.T., 11/2/88 at 52–53. The Court rejected a similar argument in *Commonwealth v. Jones,* 546 Pa. 161, 206, 683 A.2d 1181, 1203 (1996), where the prosecution stated that the jury did not have an opportunity to hear from the victim's family and friends, who would feel exactly the opposite of the defendant's family members. As in *Jones,* these comments served to respond to Appellant's family's testimony and the jury was able to infer the victim's family's feelings. While we do not condone the prosecutor's additional comments that the victim's son misses his father, we cannot conclude that the unavoidable effect of these comments was to arouse the jury's emotions or prejudice the jury so they could not fairly weigh the evidence.[4]

Next, Appellant claims that the trial court's instruction on the aggravating circumstance that the offense was committed by means of torture, 42 Pa.C.S. § 9711(d)(8), was unconstitutionally vague. The court's instruction was as follows:

4. This claim and most of Appellant's remaining claims were not raised on direct appeal. Appellant primarily argues the merits of each claim and notes that trial and appellate counsel were ineffective in handling the issues. The PCRA court ruled on the merits of Appellant's claims. We have also addressed the merits. Since we conclude that the claims do not have merit, it is unnecessary to address the other prongs of the test applicable to ineffective assistance of counsel claims, which is set forth on page three above.

> The second aggravat[ing] circumstance advanced by the Commonwealth was that the ... offense was committed by means of torture. The word "torture" is generally understood as the infliction of a considerable amount of pain and suffering on a victim which is unnecessarily h[einous], atrocious or cruel, manifesting exceptional depravity. There must of necessity be more than a mere intent to kill to be an aggravating circumstance, the law requires an intent to cause pain and suffering in addition to the intent to kill. There must be an indication that the killing is not—the killer is not satisfied with the killing alone.

N.T., 11/2/88 at 55. This Court has previously found this instruction proper and has held that the aggravating circumstance that an offense was committed by means of torture is not unconstitutionally vague. In *Commonwealth v. Pursell,* 508 Pa. 212, 238–39, 495 A.2d 183, 196–97 (1985), the Court explained that this aggravating circumstance is sufficiently specific because the meaning of torture is a matter of common knowledge and an ordinary man would not have to guess what was intended. Thus, the jury will not impose the death penalty in an arbitrary manner. The trial court's instruction defining torture in this case is essentially the same as that given in *Pursell. See id.* at 239 n. 13, 495 A.2d at 197 n. 13.

Appellant appears to concede that the trial court gave an instruction defining torture that comports with *Pursell* and its progeny.[5] Nonetheless, Appellant argues that the definition employed by the court is unconstitutionally vague under *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). *Maynard,* however, found vague an aggravating circumstance in the Oklahoma death penalty statute that provided that the murder was "especially heinous, atrocious, or cruel." 486 U.S. at 363–64, 108 S.Ct. 1853. The Court explained that these words alone did not guide the jury as almost every murder could be characterized as especially heinous, atrocious, or cruel. *Id. Maynard* did not involve an

5. *See, e.g., Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710 (1992) (requiring instruction that defines the term torture); *Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728 (1987) (same).

aggravating circumstance that an offense was committed by means of torture. In addition, the Court in *Maynard* agreed that a limiting instruction that the aggravating circumstance at issue required torture would be constitutionally acceptable. *Id.* at 364–65, 108 S.Ct. 1853. Thus, *Maynard* does not preclude defining torture as the infliction of pain that is unnecessarily heinous, atrocious or cruel, with the intent to cause pain and suffering in addition to the intent to kill. Appellant's claim is without merit.

Appellant next argues that 42 Pa.C.S. § 9711(d)(9), which sets forth as an aggravating factor that the defendant has "a significant history of felony convictions involving the use or threat of violence to the person," is unconstitutionally vague. While acknowledging that the Court has consistently rejected this argument, *see, e.g., Commonwealth v. Rivers*, 537 Pa. 394, 644 A.2d 710 (1994); *Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689 (1986), Appellant contends that the Court wrongly decided the issue.

Appellant maintains that in *Rivers* and *Fahy* the Court improperly relied upon *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984), which held that the mitigating circumstance that a defendant has "no significant history of prior criminal convictions" is not vague. *Beasley* relied upon *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), where the defendant challenged a similar mitigating circumstance under the Florida death penalty statute. The United States Supreme Court found that the death penalty statute presented questions that required no more line-drawing than is commonly required of a factfinder and held that the mitigating circumstance is not unconstitutionally vague. *Id.* at 257, 96 S.Ct. 2960.

In evaluating a vagueness challenge, the Court considers whether the death penalty statute adequately channels the sentencing jury's discretion so that the death penalty is not imposed on arbitrary or capricious grounds. *See Commonwealth v. Holcomb*, 508 Pa. 425, 463, 498 A.2d 833, 852–53 (1985). While *Beasley* involved a mitigating circumstance and

thus did not present the identical issue that was before the Court in *Rivers* and *Fahy,* the Court looked to that decision because the statutory language challenged as vague was the same. A finding that a mitigating circumstance adequately channels the sentencing jury's discretion supports that an aggravating circumstance with the same language also passes constitutional muster. Thus, Appellant's claim is without merit.[6]

Appellant next argues that the trial court and counsel improperly discussed outside of his presence whether an instruction on voluntary manslaughter would be provided to the jury. He maintains that this discussion violated his right to be present during all critical phases of the trial. Appellant relies upon a discussion in the record that references an agreement made on an earlier date on whether the instruction would be given. *See* N.T., 10/31/88 at 92. Present counsel reviewed the record for the referenced date and found no discussion of the issue. Appellant thus claims a discussion was improperly held outside of his presence.

▄▄▄ Defendants have a constitutional right to be present in court at every stage of a criminal trial. *Commonwealth v. Ford,* 539 Pa. 85, 100–01, 650 A.2d 433, 440 (1994). This right is based in part on the defendant's right to confront his witnesses under the Sixth Amendment of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution. *See id.* In addition, the Pennsylvania Rules of Criminal Procedure provide:

> The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The

6. Appellant also argues that three other states have found similar aggravating circumstances unconstitutionally vague. *See State v. David,* 468 So.2d 1126 (La.1984); *Gall v. Commonwealth,* 607 S.W.2d 97 (Ky.1980); *Arnold v. State,* 236 Ga. 534, 224 S.E.2d 386 (1976). This Court distinguished these decisions in *Commonwealth v. Holcomb,* 508 Pa. 425, 463–64, 498 A.2d 833, 853 (1985), and we shall not revisit this issue.

defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict.

Pa. R.Crim. P. 1117(a).

■ The trial court explained that its discussions with counsel essentially involved housekeeping matters and that Appellant's presence would not contribute to the fairness of the trial. Appellant does not develop his constitutional argument in his brief to this Court. We conclude that the trial court's apparent discussion with counsel about the proceedings outside of Appellant's presence did not implicate his confrontation rights and his right to be present at all stages of the trial was not violated.

■ Appellant next argues that the trial court erred in answering the jury's question about accomplice liability. This Court ruled on this claim on direct appeal. *See Rompilla,* 539 Pa. at 508–09, 653 A.2d at 630–31. Appellant may not obtain relief under the PCRA on a claim that has already been litigated. 42 Pa.C.S. § 9543(a)(3). While Appellant contends in a footnote that appellate counsel did not adequately pursue this claim on direct appeal, post-conviction review of a claim already litigated on appeal cannot be obtained by alleging ineffective assistance of prior counsel and presenting new theories of relief. *Commonwealth v. Peterkin,* 538 Pa. 455, 460–61, 649 A.2d 121, 123 (1994).

Appellant next argues that the trial court improperly allowed the prosecutor to read to the jury the testimony of the victim of a prior rape during the penalty phase. Appellant was convicted of rape and burglary arising from a single incident in 1974. When Appellant objected to the introduction of the testimony, the prosecutor argued in part that it was necessary to establish that the related burglary conviction was violent for purposes of the aggravating circumstance that Appellant has a significant history of felony convictions involving the use or threat of violence, 42 Pa.C.S. § 9711(d)(9). *See* N.T., 11/1/88 at 33–38. The trial court admitted the testimony. *Id.*

On direct appeal, Appellant's former counsel argued that the trial court erred in admitting the rape victim's testimony because it appealed to the passions of the jury. The Commonwealth again maintained that it was necessary to establish the aggravating factor and that reading the transcript was the most efficient way to present the facts. This Court held that the trial court did not err in allowing the testimony to be read to the jury. *Rompilla*, 539 Pa. at 512–14, 653 A.2d at 633 (1995). Relying upon *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832 (1986), the Court stated that the Commonwealth had to show a threat or use of violence in the commission of the burglary to establish a significant history of felonies under 42 Pa.C.S. § 9711(d)(9). *Id.*[7] The Court also concluded that by reading the transcript, the Commonwealth presented the facts in a way that minimized the inflammatory impact.

The Court has thus already decided on direct appeal that the rape victim's testimony was admissible. Nonetheless, Appellant now argues that prior counsel was ineffective for not bringing *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988), to the attention of the trial court and this Court on direct appeal. Appellant maintains that under *Rolan*, it was only necessary to introduce evidence of his burglary conviction to establish a felony involving the threat or use of violence.[8]

7. In *Christy*, the Commonwealth introduced evidence of the defendant's prior burglary conviction to establish the aggravating factor. The Commonwealth did not introduce evidence showing that the burglary involved the threat or use of violence. On appeal, the Court stated that the Commonwealth must present evidence that the defendant actually threatened or used violence to include a felony under 42 Pa.C.S. § 9711(d)(9). 511 Pa. at 507–08, 515 A.2d at 840–41. However, since the jury did not find the aggravating factor, the Court held that the error was not prejudicial. *Id.*

8. In *Rolan*, the Commonwealth introduced evidence of the defendant's prior burglary convictions in order to establish the aggravating factor. Appellate counsel argued that trial counsel was ineffective in allowing the evidence since burglaries are not felonies involving the use or threat of violence. The Court held that burglary is a crime involving the use or threat of violence and found counsel effective. 520 Pa. at 15, 549 A.2d at 559–60. It stated that the discussion in *Christy* as to the evidence necessary to establish the aggravating factor was dicta since the jury did not find the aggravating factor. *Id.* n. 5.

■ As stated above, a claim that has already been litigated cannot be revisited by alleging ineffective assistance of prior counsel and presenting new theories of relief. *Commonwealth v. Peterkin*, 538 Pa. 455, 460–61, 649 A.2d 121, 123 (1994). Even if it could, Appellant's claim does not have arguable merit. Regardless of the applicability of *Rolan*, the Commonwealth was entitled to introduce facts surrounding the burglary conviction. *See Commonwealth v. Jones*, 542 Pa. 464, 523–24, 668 A.2d 491, 520 (1995); *Commonwealth v. Beasley*, 505 Pa. 279, 288, 479 A.2d 460, 465 (1984). The Commonwealth may place the underlying facts of prior convictions before the jury so that it is able to assess the weight to be given to the aggravating factor. *Jones*, 542 Pa. at 523–24, 668 A.2d at 520. Here, when Appellant's trial counsel objected to the testimony and then offered to stipulate that the burglary is a crime of violence, the Commonwealth properly argued that the jury was entitled to know the underlying facts. *See* N.T., 11/1/88 at 33–38. Thus, no relief is due on this claim.[9]

Appellant next argues that his due process rights were violated because the trial court did not answer the jury's question about his parole eligibility. During jury deliberations in the penalty phase, the jury asked, "If a life sentence is imposed, is there any possibility of the Defendant ever being paroled?" N.T., 11/2/88 at 73. The trial court responded:

> I'm sorry to say, I can't answer that question. That's not before you as such. The only matter that you can consider in the Sentencing Hearing is the evidence that was brought out in the course of the Hearing and the Law with respect to the Court's Charge. That's the only consideration you have, I'm sorry to say. I—if there were other alternatives that you should consider, we would have outlined them in the Charge, all right. Are there any other questions?

*Id.* at 73–74. Appellant argues that the jurors should have been told that a life sentence means life without parole under

9. To the extent the Court's decision on direct appeal in this case departs from *Rolan*, this Court has since affirmed the principles in *Rolan*. *See, e.g., Commonwealth v. Gibson*, 720 A.2d 473 (Pa. 1998).

*Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), which mandates such an instruction when a defendant requests it and his future dangerousness is at issue.

 Under the current state of the law in Pennsylvania, the jury must be told that life means life without parole only when the defendant's future dangerousness is at issue. *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 35–36 (Pa.1998). Appellant argues that his future dangerousness was at issue because the Commonwealth argued the aggravating circumstance that he has a significant history of felony convictions involving the use or threat of violence. The Court rejected this argument in *Commonwealth v. May*, 551 Pa. 286, 710 A.2d 44, 47 (Pa.1998). As stated in that case, this aggravating circumstance only addresses Appellant's past conduct, not his future dangerousness. *See id.* Thus, no relief is due.[10]

 Next, Appellant argues that the trial court erred in failing to excuse a juror for cause and that trial counsel failed to challenge him for cause. This argument was not raised in Appellant's PCRA petition or in the proceedings before the PCRA court. Thus, Appellant has waived this claim. *See Commonwealth v. Albrecht*, 720 A.2d 693 (Pa. 1998).

Appellant next argues that this case should be remanded to the Court of Common Pleas for a hearing on recently discovered claims related to alleged violations of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This issue has already been litigated. Appellant filed a remand motion in this Court on March 10, 1997 alleging the possibility of misconduct by the Federal Bureau of Investigation in the handling of evidence in this case. This Court entered an

10. This author agrees with the dissent's position that a *Simmons* instruction should be given in all cases and has previously so stated. *See Clark*, 710 A.2d at 43–44 (Nigro, J., concurring, joined by Flaherty, J. and joined in relevant part by Zappala, J.); *May*, 710 A.2d at 49 (Nigro, J., concurring, joined by Zappala, J.). Under the current state of the law, however, Appellant's argument that he was entitled to the instruction because the Commonwealth argued the aggravating circumstance identified above, is without merit. *See May*, 710 A.2d at 47.

order denying the motion for remand on May 20, 1997. Appellant now summarizes his remand motion and offers no reason why this Court should reconsider its earlier ruling. No relief is due on this claim.

Lastly, Appellant argues that he is entitled to a new trial and sentencing proceeding because the prejudicial effects of the cumulative errors in this case undermine confidence in the outcome at both stages of the trial. The Court rejected a similar argument in *Commonwealth v. McGill*, 545 Pa. 180, 680 A.2d 1131 (Pa.1996). In that case, the defendant's individual claims of error failed for lack of merit. As such, there could be no prejudicial cumulative effect when there was no harm in the first place. *Id.* 680 A.2d at 1136. The same is true here.

Having found that none of Appellant's claims warrants relief, the order of the Court of Common Pleas is affirmed.

Chief Justice FLAHERTY files a Dissenting Opinion.

Justice ZAPPALA and Justice NEWMAN concur in the result.

FLAHERTY, Chief Justice, dissenting.

I believe the majority is in error in its treatment of the issue pertaining to the jury's question about the defendant's parole eligibility. Under *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) and *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 35–36 (Pa.1998), the court must tell a jury that a life sentence means life without parole, if the defendant requests the instruction and his future dangerousness is at issue. Here, during deliberations in the penalty phase, the jury asked, "If a life sentence is imposed, is there any possibility of the Defendant ever being paroled?" I view this question as a clear expression of the jury's concern about the defendant's future dangerousness. I would therefore hold that the trial court's refusal to explain the meaning of life without parole constituted error under *Commonwealth v. Clark, supra*. I would therefore reverse the order of the

court of common pleas and remand for proceedings consistent with this opinion.

I would go further and require an explanation of the meaning of a life sentence in all capital cases. There can be no harm in instructing juries that in Pennsylvania appellant would be statutorily ineligible for parole if sentenced to life in prison, but that a life sentence might nonetheless be commuted by the governor. On the other hand, if we do not so instruct, a jury, erroneously believing that a prisoner sentenced to life may be paroled within a period of years, may impose the death penalty for reasons which are not based in law.