31 A.3d 668

COMMONWEALTH of Pennsylvania, Appellee

v.

Freeman MAY, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 15, 2010.

Decided Nov. 23, 2011.

508

Jules Epstein, Kairys, Rudovsky, Messing & Feinberg, Philadelphia, John Roger Kelsey III, Lebanon, for Freeman May.

Robert William McAteer, Amy Zapp, PA Office of Attorney General, David J. Arnold Jr., for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice EAKIN.

Freeman May appeals from the judgment of sentence of death imposed following his third penalty phase. For the following reasons, we affirm.

The facts and procedural history herein are taken in large part from our opinions in appellant's first direct appeal, *Commonwealth v. May*, 540 Pa. 237, 656 A.2d 1335 (1995) (*May I*), the direct appeal following his second penalty phase hearing, *Commonwealth v. May*, 551 Pa. 286, 710 A.2d 44 (1998) (*May II*), and the direct appeal following his third penalty phase hearing, *Commonwealth v. May*, 587 Pa. 184, 898 A.2d 559 (2006) (*May III*). In 1988, in a remote, wooded location in Lebanon County, a man discovered human skeletal remains buried under logs, brush, and leaves. A forensic pathologist determined the remains were those of Kathy Lynn Fair, whose sister had reported her missing September 4, 1982, when she failed to appear for an outing. The forensic pathologist concluded the cause of death was multiple stab wounds inflicted by a short, single-edged weapon, most likely a knife.

The police arrested appellant in 1990, and charged him with Fair's murder. At trial, a police detective testified that when Fair's remains were discovered, he remembered a December, 1982 incident in which two girls, GS and SS, had accepted rides from appellant. The girls were stabbed with a short,

folding, single-edged knife and left for dead not far from the place where Fair's remains were ultimately discovered; [1] one of the young women had also been raped, but both survived the attack. A jury convicted appellant of two counts each of attempted murder,[2] aggravated assault,[3] reckless endangerment of another person,[4] and one count of rape [5] in connection with the 1982 assaults.

Another jury convicted appellant of first degree murder of Fair.[6] After a penalty hearing, the jury found one aggravating circumstance, that the killing was committed while appellant was perpetrating a felony,[7] namely rape, and one mitigating circumstance, that he had no significant history of prior criminal convictions.[8] The jury determined the aggravating circumstance outweighed the mitigating circumstance, and appellant was sentenced to death. 42 Pa.C.S. § 9711(c)(1)(iv). On direct appeal, this Court affirmed the conviction, but reversed the sentence, concluding the jury could not properly consider whether appellant committed murder while in the perpetration of rape because the trial court never instructed the jury on the elements of rape. *May I*, at 1344–45. Accordingly, the matter was remanded for a new penalty phase.

At the second penalty phase, a new jury found one aggravating circumstance, a significant history of felony convictions involving the use or threat of violence to the person,[9] and no mitigating circumstances. Accordingly, the sentence was death.[10] On direct appeal, we affirmed both the conviction and death sentence. *May II*, at 48.

1. At trial, appellant's brother testified appellant always carried a folding buck knife, which is a short, sturdy, single-edged knife.

2. 18 Pa.C.S. §§ 901, 2502.

3. *Id.*, § 2702.

4. *Id.*, § 2705.

5. *Id.*, § 3121.

6. *Id.*, § 2502(a).

7. 42 Pa.C.S. § 9711(d)(6).

8. *Id.*, § 9711(e)(1).

9. 42 Pa.C.S. § 9711(d)(9).

10. 42 Pa.C.S. § 9711(c)(1)(iv).

Appellant initiated PCRA proceedings by filing a *pro se* petition, motions for stay of execution, and appointment of counsel. Appointed counsel subsequently filed an amended PCRA petition, raising more than a dozen substantive issues. The PCRA court denied relief on all of appellant's issues, but granted an evidentiary hearing for his contention that trial counsel was ineffective for failing to investigate, develop, and present mitigating evidence of appellant's allegedly traumatic childhood. *May III*, at 564. Following the hearing, the PCRA court denied relief on this sole remaining issue and dismissed the PCRA petition. On appeal, we determined trial counsel was ineffective for failing to object to the trial court's ruling concerning the introduction of mitigating evidence, and appellate counsel was ineffective for failing to raise the claim on direct appeal. Accordingly, we vacated appellant's sentence and remanded the matter for a third penalty phase. *May III*, at 576–77.

Upon remand, appellant litigated several pre-trial motions,[11] which the trial court denied. At the conclusion of appellant's third penalty phase, the jury found one aggravating circumstance[12] outweighed two mitigating circumstances,[13] and sentenced appellant to death. Appellant filed a timely post-

11. Appellant raised the following pre-trial motions:
  1. Motion in Limine to Bar the Commonwealth from Producing Evidence of or Question Witnesses about Allegations of Prior Uncharged Criminal Conduct;
  2. Motion to Compel the Jury to Consider and Weigh the Mitigating Circumstance of no Significant History of Criminal Convictions;
  3. Motion to Bar Use of the Significant History Aggravator Because it is Unconstitutionally Vague as Applied in this Case;
  4. Motion to Bar Use of the Significant History Aggravator Because it Violates the Due Process and Ex Post Facto Clauses as Applied in this Case; and
  5. Motion to Bar Death Penalty.
  Trial Court Opinion, 8/29/08, at 2.

12. "The defendant has a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9).

13. "The defendant was under the influence of extreme mental or emotional disturbance," *id.*, § 9711(e)(2), and "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." *Id.*, § 9711(e)(8).

sentence motion, which the trial court denied. With the Commonwealth's agreement, appellant was granted permission to appeal his sentence, *nunc pro tunc*. Appellant then filed a concise statement of matters complained of on appeal. His issues in this appeal may be summarized as: (1) whether appellant was denied due process because he was shackled during a portion of the penalty phase hearing; (2) whether the trial court's jury instruction regarding the possibility of parole violated appellant's due process and Eighth Amendment rights; (3) whether the "significant history" aggravating circumstance [14] is unconstitutionally vague and violates the *ex post facto* and due process clauses of the United States and Pennsylvania Constitutions; and (4) whether appellant's death sentence was the result of passion, prejudice, or arbitrariness.[15]

■ Appellant claims he is entitled to a new penalty phase because the trial court required him to be shackled for a portion of the hearing without cause or justification. Appellant was not shackled during any of the initial proceedings, including opening arguments. N.T. Sentencing, 10/10/08, at 305–06. However, at the trial court's instruction, appellant was shackled on the second day and throughout the duration of the hearing. *Id.* Defense counsel noted the shackling on the third day of the hearing and requested a curative instruction be given to the jury. *Id.* The discussion was as follows:

[Defense Counsel]: Yesterday I noticed that [appellant] had been re-shackled. I made some comment in the opening about him not being shackled and how—

The Court: They spoke to me and frankly his unshackling occurred without my permission. Okay.

[Defense Counsel]: No.

The Court: He was re-shackled at my direction.

[Defense Counsel]: *I just wanted the jury to be informed it wasn't because of some misconduct that he had done. That's all.*

14. 42 Pa.C.S. § 9711(d)(9).

15. Appellant's issues have been reorganized for ease of discussion.

The Court: I am not even sure if they ever noticed. And for me to say something might interject something that's not there.

[Defense Counsel]: Considering I talked about it in my opening.

The Court: I didn't remember that you had said that to be honest with you.

[Defense Counsel]: He was not shackled during any of the proceedings starting with our opening.

The Court: He was shackled throughout the jury selection.

[Defense Counsel]: No, he wasn't. He was not shackled to anything in this courtroom until yesterday.

The Court: Well, that's my mistake because, frankly, he really should have been.

[Defense Counsel]: *I want you to relate that that was a mix-up between the Sheriff's Office and not something he may have done to get punished for.*

The Court: I can tell them that.

[Defense Counsel]: They have seen these things on television where—

The Court: I can tell them that.

[Defense Counsel]: Thank you.

*Id.* (emphasis added). We have previously held:

"[w]hile it is true that the presumption of innocence is removed once guilt has been determined, it cannot be said that the appearance of a defendant in shackles could not influence the jury at the penalty phase. An integral part of the jury's determination whether a defendant should be sentenced to death is the threat of danger the defendant poses to the community. Viewing the defendant in handcuffs and shackles during the penalty phase could have the effect of creating in the minds of the jurors the presumption that the defendant is dangerous and therefore worthy of the death sentence." Nevertheless, . . . a judge has the responsibility and authority to maintain a courtroom atmosphere which is conducive to the fair and orderly disposition of the

issues presented, and this includes the right to restrain the defendant, if the circumstances so warrant.

*Commonwealth v. Smith,* 604 Pa. 126, 985 A.2d 886, 903 (2009) (quoting *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367, 1378–79 (1991) (internal citations omitted)).

As revealed by the record, trial counsel never objected to appellant's shackling. Instead, counsel requested the trial court provide an explanation to the jury for appellant's shackling. He raised this due process claim for the first time on appeal. *See* Trial Court Opinion, 11/30/09, at 6. Thus, the claim is waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

■ Appellant next claims the trial court erred in instructing the jury about the possibility of parole from a life sentence because the court's instructions misled the jury as to its responsibility in imposing the death sentence and implied an increased frequency in the occurrence of commutations. During trial, the jury returned with a question inquiring if life imprisonment meant life without the possibility of parole. The court granted the jury's request and instructed the jury accordingly. N.T. Sentencing, 10/15/08, at 871–74. Appellant did not object to the judge's instructions when given the opportunity. *Id.,* at 874. Thus, this claim is waived. Pa. R.A.P. 302(a).

■ Next, appellant claims the trial court erred in permitting the prosecution to seek application of the "significant history" aggravating circumstance [16] because it is unconstitutionally vague as applied to this case. Appellant specifically contends the Eighth and Fourteenth Amendments to the United States and Pennsylvania Constitutions have been violated because the prosecution's presentation of the "significant history" aggravator arose from a single criminal episode that occurred after the homicide in question, which is distinguish-

16. 42 Pa.C.S. § 9711(d)(9) ("The defendant has a significant history of felony convictions involving the use or threat of violence to the person.").

able from current precedent. We have continuously upheld the "significant history" aggravator against unconstitutionally vague challenges. *See May III,* 898 A.2d at 571–72; *Commonwealth v. Williams,* 581 Pa. 57, 863 A.2d 505, 521 (2004) (citations omitted); *Commonwealth v. Rompilla,* 554 Pa. 378, 721 A.2d 786, 792–93 (1998); *Commonwealth v. Rivers,* 537 Pa. 394, 644 A.2d 710, 719 (1994); *see also Commonwealth v. Fahy,* 512 Pa. 298, 516 A.2d 689, 697–98 (1986) ("significant history" phrase in aggravating circumstances portion of death penalty statute is not unconstitutionally vague or overbroad). Further, this Court has previously determined the "significant history" aggravator is not unconstitutionally vague, as to invite arbitrary and capricious imposition of the death penalty. *Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730, 737 (1984).

Appellant's contention that this case is different from the aforementioned cases is meritless. Appellant cites numerous cases favorable to his purported distinction while failing to cite relevant precedent that addresses a similar factual situation. In *Commonwealth v. Johnson,* 604 Pa. 176, 985 A.2d 915 (2009), we held the fact the defendant's convictions arose from a single incident and occurred after the murder at issue did not reduce the convictions' significance or relevance with regard to the "significant history" aggravating circumstance. *Id.,* at 927–28. Thus, as the facts in both this case and *Johnson* arose from a single criminal episode that occurred after the homicide at issue, appellant's case is not distinguishable from current precedent, and his previous convictions were properly considered in determining whether the "significant history" aggravator applied. Appellant's argument is meritless.

█ Appellant further contends the inconsistent jury verdicts in his penalty phases confirm the unconstitutional vagueness that plagues the "significant history" aggravating circumstance. Appellant points out his first penalty phase jury found no "significant history" mitigator, but his second and third penalty phase juries found the "significant history" aggravator. Numerous factors contributed to each jury's

determination, and appellant fails to provide any correlation between opposing aggravating and mitigating circumstances and unconstitutional vagueness of the "significant history" aggravator. There is no doubt different information was presented to the juries in appellant's case. Trial Court Opinion, 8/29/08, at 19. Appellant was represented by different counsel, and different aggravating factors were presented to the juries. The jury in the first penalty phase was not presented with the "significant history" aggravating circumstance, whereas the juries in the second and third penalty phases were. Each jury made independent credibility determinations. *Id.* Appellant fails to explain how different juries finding different aggravating and mitigating circumstances constitutes unconstitutional vagueness. As appellant presents little more than a bald assertion, his argument fails.

Appellant argues the *ex post facto* and due process clauses of the United States Constitution have been violated because at the time he committed the murder, he did not have a significant history of convictions involving violence. He specifically contends a defendant can only be eligible for the death penalty if the factual basis that makes out the aggravating circumstance was in existence at the time the offense was committed.

This Court has held:

[n]othing contained in [42 Pa.C.S. § 9711(d)(9) ] would lead us to believe that the Legislature intended to limit the scope of prior convictions for purposes of aggravating sentence to only those arising from acts occurring prior to the instant offense. The term "significant history" refers to [a]ppellant's status at the time of sentencing, not at the time he committed the crime for which he is being sentenced. The function of the penalty phase is to focus upon the aspects of a defendant's character, which is properly reflected in his prior convictions, regardless of when the acts leading to those convictions occurred.

*Commonwealth v. Reid,* 537 Pa. 167, 642 A.2d 453, 458 (1994) (internal citations omitted).

Appellant concedes "this Court has interpreted [the significant history aggravator] to include convictions for crimes committed after the homicide in question." Appellant's Brief, at 53. However, he contends the United States Supreme Court has made it clear that aggravating circumstances must be treated as elements of the crime, and basing a death penalty prosecution on facts that were not in existence at the time of the crime violates the *ex post facto* and due process clauses of the United States Constitution. In support of his argument, he purports the holding in *Reid* conflicts with United States Supreme Court precedent, culminating with *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003).

Contrary to appellant's arguments, those cases stand for the proposition that all aggravating circumstances must be found by a jury, not a judge. *See Sattazahn*, at 112, 123 S.Ct. 732 ("If a jury unanimously concludes that a State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that 'acquittal' of the offense of 'murder plus aggravating circumstance(s).' "); *Ring*, at 602, 122 S.Ct. 2428 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 482–83, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)) ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact ... must be found by a jury beyond a reasonable doubt."). Thus, *Reid* has not been overruled or abrogated by United States Supreme Court precedent.

Moreover, the United States Supreme Court upheld a similar aggravating circumstance in *Tuilaepa v. California*, 512 U.S. 967, 979, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).[17] *Tuilaepa* held "[b]oth a backward-looking and forward-looking inquiry are a permissible part of the sentencing process ...

17. The California statute is similar to Pennsylvania's "significant history" aggravating circumstance, providing: "in determining the penalty, the trier of fact shall take into account ... [t]he presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence." Cal.Penal Code Ann. § 190.3(b).

and the States have considerable latitude in determining how to guide the sentencer's decision in this respect." *Tuilaepa*, at 977, 114 S.Ct. 2630. Therefore, by giving states "considerable latitude" in governing their aggravating circumstances, the United States Supreme Court considers a defendant's criminal history relevant, regardless of when the underlying facts occurred. Accordingly, appellant's claim is meritless.

■ Lastly, pursuant to the Sentencing Code, 42 Pa.C.S. § 9711(h)(3), this Court is required to conduct a statutory review of the death sentence. We must affirm the sentence unless it is determined: "(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance...." *Id.* Although this review is mandatory, appellate counsel raises four discrete issues under § 9711(h)(3), contending each demonstrates passion, prejudice, and arbitrariness were introduced into the jury's determination. Appellant specifically contends the prosecutor's comments on appellant's lack of remorse, the prosecutor's labeling of appellant's mitigating evidence as "excuses," the trial court's instruction regarding the possibility of the law changing in the future, and appellant's shackling during his penalty phase, directly involve passion, prejudice, and arbitrariness, and thus are presently reviewable under our automatic, statutory review.

■ Appellant fails to acknowledge that these issues were never objected to below and presumptively fall under the rubric of ineffective assistance of counsel.[18] "[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002). In *Commonwealth v. Chambers*, 602 Pa. 224, 980 A.2d 35 (2009),

18. "In order to obtain relief based on a claim of ineffectiveness, a [Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546,] petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Commonwealth v. Lesko*, 609 Pa. 128, 15 A.3d 345, 373 (2011).

we declined to review waived issues that derived from strategic decisions of the defendant's trial counsel under the guise of an "arbitrary factor" for the purposes of 42 Pa.C.S. § 9711(h)(3)'s statutory review. *Chambers,* at 58–59.

Although appellant acknowledges this Court's recent decision in Chambers, he baldly asserts this case is distinguishable. *See* Appellant's Brief, at 31 n. 9 ("[a]ppellant notes here this Court's recent decision in *Commonwealth v. Chambers,* 602 Pa. 224, 980 A.2d 35, 59 (2009).... Here, by contrast, the challenged occurrences ... all directly involve passion, prejudice, and/or arbitrariness."). In a nearly identical fashion as *Chambers,* appellant relies on multiple string cites that predate our holding in *Grant,* as well as this Court's abrogation of the capital direct appeal relaxed waiver doctrine in *Freeman. See Chambers,* at 60–61. All of appellant's claims involve instances that could have been objected to by trial counsel. For instance, the prosecutor's labeling of appellant's mitigating evidence as excuses could have been objected to immediately following the prosecutor's comments. The trial court then would have had the opportunity to sustain the objection and issue a charge.[19] Having failed to object, appellant must now defer these issues to collateral review as ineffective assistance of counsel claims.

Accordingly, appellant's issues do not implicate an "arbitrary factor" for the purposes of 42 Pa.C.S. § 9711(h)(3). The waived claims, thus, are unreviewable, and we dismiss them without prejudice to appellant's right to pursue them as ineffectiveness claims under the PCRA.

**19.** "Many of these claims are based on omissions, which, by their very nature, do not appear on the record and thus, require further fact-finding, extra-record investigation and where necessary, an evidentiary hearing." *Grant,* at 736 (citations omitted). "Waiting to raise the claims on collateral review 'affords the opportunity to develop a factual basis for the claim that counsel's performance did not meet the standard for effective assistance of counsel.'" *Id.* (quoting *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir.1996)). "By requiring ineffectiveness claims to be raised on direct appeal ..., the trial court is eliminated from the process, leaving the appellate court in an awkward position as to the manner in which these claims can be assessed. Appellate courts rarely function as fact-finders and do not have the resources to do so." *Id.* (citations omitted).

■ Regarding the mandatory review we must conduct under § 9711(h)(3), upon review of the facts and the record, and excepting those claims deferred to collateral review, we conclude the sentence of death was not the product of passion, prejudice, or any other arbitrary factor; rather, it was based on sufficient evidence that appellant intentionally killed Fair. We also conclude the evidence was sufficient to support the finding of at least one aggravating circumstance, that appellant has a significant history of felony convictions involving the use or threat of violence to the person. *See* 42 Pa.C.S. § 9711(d)(9).

The sentence of death is affirmed.[20]

Chief Justice CASTILLE, Justices SAYLOR, BAER, TODD, McCAFFERY, and ORIE MELVIN join the opinion.

---

**20.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).