J-S31043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ISAAC DUGAN PERKINS | |
| Appellant | No. 1970 MDA 2014 |

Appeal from the Judgment of Sentence of October 23, 2014
In the Court of Common Pleas of Adams County
Criminal Division at No: CP-01-CR-0000076-2014

BEFORE:  BENDER, P.J.E., ALLEN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:             **FILED JUNE 08, 2015**

Isaac Dugan Perkins appeals his October 23, 2014 judgment of sentence. Perkins' counsel also seeks to withdraw from his representation pursuant to **Anders**/**Santiago**.[1] We grant the petition to withdraw, and we affirm the judgment of sentence.

On December 14, 2013, Perkins was arrested and charged with persons not to possess a firearm, 18 Pa.C.S.A. § 6105(a)(1); criminal trespass, 18 Pa.C.S.A. § 3503; unlawful devices and methods (semiautomatic rifle or pistol), 34 Pa.C.S.A. § 2308(a)(2); unlawful acts concerning licenses, 34 Pa.C.S.A. § 2711(a)(1); protective material required, 34 Pa.C.S.A. § 2524; attempted unlawful killing or taking of big game, 34

---

[1] **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

Pa.C.S.A. § 2321(a)(2); attempted unlawful taking or possession of game or wildlife, 34 Pa.C.S.A. § 2307(a); and trespass on private property while hunting, 34 Pa.C.S.A. § 2314.

Perkins did not appear for his preliminary hearing and a bench warrant issued on January 29, 2014. Perkins, a Florida resident, was picked up on the warrant in Florida and appeared before the court in Pennsylvania on May 5, 2014.

Perkins was tried by a jury on August 7, 2014. At trial, the following evidence was taken. Corporal Christian Fow has twenty years' experience with the Pennsylvania State Police. Notes of Testimony ("N.T."), 8/7/2014, at 24. On December 14, 2013, on his way to work and while on duty, Corporal Fow decided to check on an abandoned property that had been burglarized recently because he saw a truck parked in the driveway. *Id.* at 26-27. Corporal Fow was also concerned because he previously had caught people poaching on that property. *Id.* at 28. When he got to the truck, Corporal Fow saw two sets of footprints in the snow leading away from the house. Corporal Fow followed the footprints and saw that they led in two different directions. *Id.* at 32.

Corporal Fow followed one set of footprints. In a field, Corporal Fow found Perkins, standing under a tree. *Id.* at 34-35. At that time, there were approximately six inches of snow on the ground and only one set of footprints nearby. Perkins told Corporal Fow that he was looking around the property. *Id.* at 35. Corporal Fow asked if Perkins was hunting, and Perkins

- 2 -

said yes. Corporal Fow then asked whether Perkins had a weapon. Perkins said yes, and started to reach for a gun. Corporal Fow told him not to touch the weapon, identified himself as a police officer, and retrieved Perkins' gun. *Id.* at 37. The gun was leaning against the tree and within arm's reach of Perkins. *Id.* at 38. Corporal Fow never saw the gun in Perkins' hands, nor did he see Perkins touch the gun. *Id.* at 57. The gun was a Ruger 10/22 semi-automatic, and was loaded with ammunition in a ten-round magazine. *Id.* at 39, 41. Perkins could not produce a hunting license. *Id.* at 42.

Corporal Fow then walked Perkins back to the truck. The property's caretaker arrived, and the men waited for another state trooper. At that point, Corporal Fow saw Perkins' brother, Isaiah Perkins, come out of the woods. *Id.* at 43. Isaiah approached Corporal Fow, and when Corporal Fow asked if Isaiah had a firearm, Isaiah went back into the woods to retrieve an SAR-1 semiautomatic rifle. *Id.* at 47.

Trooper Bill Mitchell transported Perkins and Isaiah to the station, while Corporal Fow called Wildlife Conservation Officer Darren David for assistance given the potential violations of the Game and Wildlife Code.[2] *Id.* at 51. Corporal Fow testified that the officers did not attempt to obtain fingerprints from Perkins' gun because the gun had been wet from the snow

_____

[2] 34 Pa.C.S.A. § 101 *et seq*.

and because Corporal Fow and other people handled the gun while taking it into evidence. *Id.* at 50-51.

Isaiah testified that he and Perkins were sightseeing in the area and decided to stop at the abandoned property because it had a historical plaque out front. *Id.* at 62-63. The brothers noticed footprints and followed them into a field. *Id.* at 63. Isaiah saw some deer and went back to his truck to retrieve his Ruger rifle. When he returned to his brother, the deer were gone, and the men sat under a group of trees for about twenty minutes. *Id.* at 64. Isaiah then had to relieve himself, so he left the Ruger rifle by a tree and went back to the truck to get some napkins. As he got to the truck, he saw some more deer, got another rifle from the truck, and followed those deer across a creek. Isaiah testified that Perkins never held the Ruger rifle. *Id.* at 66. Isaiah left his SAR-1 rifle in the woods when he returned to the truck, and he retrieved it when Corporal Fow asked about a gun. *Id.* at 72-73. Isaiah denied that he told Corporal Fow that he gave the Ruger rifle to Perkins to use for hunting. *Id.* at 74.

Perkins testified that he and Isaiah stopped at the property to look around, whereupon Isaiah saw some deer and got his gun. *Id.* at 80-81. When Isaiah left, Perkins walked around before Corporal Fow arrived. *Id.* at 82. Perkins denied ever telling Corporal Fow that he had a gun. *Id.* at 83-84. Perkins also denied ever handling the gun. *Id.* at 84. Perkins admitted that he knew he was not permitted to possess a gun. *Id.* at 87. After he testified, the court read a stipulation that Perkins had been convicted of prior

*crimina falsi*, to wit: a burglary in Florida in December 2011; a second burglary, possession of burglary tools, and theft in Florida in September 2009; and a third burglary in Florida in March 2009. The court instructed that these crimes could be used only in considering Perkins' credibility. *Id.* at 92. The parties also stipulated that Perkins was a person prohibited by law from possessing, using, or controlling a firearm. *Id.* at 52.

Officer David testified on rebuttal that, when questioned, Isaiah admitted that he passed the Ruger rifle to Perkins and that Perkins received it. *Id.* at 96. Isaiah said he gave the rifle to Perkins to use while hunting. *Id.* at 97. Also on rebuttal, Corporal Fow confirmed that Isaiah told him that Isaiah and Perkins were hunting and that Isaiah said he gave Perkins the rifle for hunting. *Id.* at 107, 109.

On August 7, 2014, following trial, the jury found Perkins guilty of persons not to possess a firearm. The trial court ruled on the summary offenses and found Perkins guilty of criminal trespass, unlawful acts concerning licenses, unlawful devices and methods, protective material required, and trespass on private property while hunting. The trial court found Perkins not guilty of the remaining charges.

On October 23, 2014, Perkins was sentenced to four to eight years' incarceration for the persons not to possess a firearm conviction. Given the offense gravity score and Perkins' prior record score, Perkins' sentence was in the mitigated range. Perkins was ordered to pay fines for the summary offenses totaling $750.00.

On November 3, 2014, Perkins filed a post-sentence motion raising a weight of the evidence claim, among others. On November 6, 2014, the trial court denied the motion.

On November 19, 2014, Perkins filed a notice of appeal. The same day, the trial court ordered Perkins to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 2, 2014, Perkins' counsel filed a statement in lieu of a concise statement, in which he indicated his intent to file an *Anders*/*Santiago* brief with this Court. Instead of an opinion, the trial court filed a statement that no issues had been raised and that the trial court had nothing to address.

Because Perkins' counsel proceeds pursuant to *Anders*/*Santiago*, this Court first must pass upon counsel's petition to withdraw before reviewing the merits of the issues presented by Perkins. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel under *Anders*, counsel must file a brief that meets the requirements established by our Supreme Court in *Santiago*. The brief must provide the following information:

> (1)  a summary of the procedural history and facts, with citations to the record;
>
> (2)  reference to anything in the record that counsel believes arguably supports the appeal;
>
> (3)  counsel's conclusion that the appeal is frivolous; and
>
> (4)  counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record,

controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his rights to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007); *see Commonwealth v. Daniels*, 999 A.2d 590, 594 (Pa. Super. 2010). Finally, to facilitate our review of counsel's compliance, counsel must attach to his petition to withdraw the letter that he sent to Perkins. *See Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Instantly, counsel has included a statement of the factual and procedural history of the case. *Anders* Brief at 7-8. Counsel identifies the issues Perkins wished to raise on appeal and refers to the support in the record both for Perkins' issues and for counsel's conclusion that the issues are frivolous. *Id.* at 8, 10-15. Therefore, the brief meets all of the technical requirements of *Santiago*. Counsel also has appended to his brief a letter to Perkins that was sent with the brief, in which counsel informed Perkins that counsel identified no meritorious issues, and that Perkins could retain new counsel, or that Perkins could proceed *pro se*. Letter, 2/25/2015.

Counsel also has provided a certificate of service indicating that the ***Anders*** brief was sent to Perkins.

However, counsel has not filed with this Court a petition to withdraw. Instead, counsel has appended to the ***Anders*** brief a putative petition. The petition has no certificate of service; however, because the brief was served upon Perkins, we may presume Perkins received the appended petition. We advise counsel that, in the future, a petition to withdraw as counsel should be filed separately with this Court. However, because counsel has met the technical requirements of ***Santiago*** and ***Nischan*** and has provided us with a copy of his letter to Perkins pursuant to ***Millisock***, we find that he has complied substantially with the ***Anders***/***Santiago*** requirements. Therefore, we proceed to conduct an independent review of the record to determine whether there are any non-frivolous issues.

Counsel indicated that Perkins wished to raise three issues that counsel characterized as implicating ineffective assistance of counsel. Those issues were: failing to recall Perkins for surrebuttal, failing to object to a juror who was sleeping during the jury charge,[3] and failing to object to a leading question posed by the Commonwealth. ***Anders*** Brief at 10.

---

[3] While Perkins characterizes the juror as sleeping, counsel described the situation as follows: "[D]uring [the trial court's] instructions to the jury, following the conclusion of the trial, for around a minute, there appeared to be a jury member that had his eyes closed. While trial counsel did try to get the notice of tip staff, [counsel] did not alert the Judge of the situation before the juror's eyes were clearly open." ***Anders*** Brief at 10.

*(Footnote Continued Next Page)*

First, we note that all of these issues, if raised directly, would be waived for failure to raise them with the trial court. To be preserved for appeal, an issue must first be raised in the trial court. **See Commonwealth v. May**, 31 A.3d 668, 673 (Pa. 2011); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). At trial, Perkins did not object to the allegedly leading question, did not raise the issue of the juror having his eyes briefly closed, and did not request the opportunity to present surrebuttal testimony. "Having been waived, pursuing this matter on direct appeal is frivolous." **Commonwealth v. Kalichak**, 943 A.2d 285, 291 (Pa. Super. 2008).

Counsel characterizes the issues as allegations of ineffective assistance of counsel, arguing that the failure to raise them was ineffectiveness. However, because this is a direct appeal, these claims are not reviewable at this time. The general rule is that ineffectiveness of counsel ("IAC") claims should be raised in collateral review.[4] **Commonwealth v. Grant**, 813 A.2d 726, 738 (Pa. 2002). In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa.

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[4] Appellate counsel, a public defender, is the same as trial counsel. Counsel cannot argue his own ineffectiveness. **See Commonwealth v. Ciptak**, 665 A.2d 1161, 1161-62 (Pa. 1995). Had the claims been raised at the correct time, we would have had to remand for appointment of new counsel. Should Perkins choose to pursue these claims on collateral review, we remind the trial court that new counsel outside of the public defender's office must be appointed.

2013), our Supreme Court revisited the issue of direct versus collateral review of IAC claims. *Id.* at 563. The Supreme Court reaffirmed the principle that ineffective assistance claims must be deferred until collateral review, and, thus, are not reviewable on direct appeal. The Court crafted two exceptions: first, the Court held that a trial court may, in its discretion, entertain ineffectiveness claims where extraordinary circumstances exist such that review of the claim would best serve the interests of justice. *Id.* at 563, 577. Second, the Court "repose[d] discretion in trial courts" to review IAC claims during post-sentence motions "only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial restrictions of the PCRA." *Id.* at 563-64, 577-80.

Instantly, Perkins provided no express and knowing waiver of IAC claims on collateral review. The trial court did not address any of the IAC claims and did not find that the claims should be addressed in direct review to serve the interests of justice or for good cause. Neither of the exceptions apply. We may not review Perkins' IAC claims at this time. Therefore, these claims are frivolous.

Counsel next addresses Perkins' claim that the evidence was insufficient for the jury to find him guilty of persons not to possess a firearm. Perkins concedes that he had a prior conviction that made it unlawful for him

- 10 -

to possess or use a firearm. However, Perkins argues that there was no evidence that he possessed the Ruger rifle. Perkins maintains that he was merely near the rifle and that there was no testimony or physical evidence that he touched the rifle. ***Anders*** Brief at 12-15.

Our standard of review for a sufficient claim is well-settled:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. . . .

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Perkins was convicted of persons not to possess a firearm, which is defined as follows:

A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence . . . shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use,

- 11 -

control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

The parties stipulated that Perkins had been convicted of one of the enumerated offenses. The Commonwealth need not prove Perkins had actual possession of the gun; constructive possession is sufficient.

> "Constructive possession" is found where the individual does not have actual possession over the illegal item but has conscious dominion over it. In order to prove "conscious dominion," the Commonwealth must present evidence to show that the defendant had *both* the power to control the firearm and the intent to exercise such control. These elements can be inferred from the totality of the circumstances.

*Commonwealth v. Heidler*, 741 A.2d 213, 215-16 (Pa. Super. 1999) (citations omitted; emphasis in original). We have found constructive possession of guns when the defendant was the only person present with a gun, *see Commonwealth v Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011); *Commonwealth v. Parker*, 847 A.2d 745, 752 (Pa. Super. 2004), and when a gun was within arm's length of the defendant. *See Commonwealth v. Hopkins*, 67 A.3d 817, 821 (Pa. Super. 2013).

Here, viewing the evidence in the light most favorable to the Commonwealth, Perkins was the only person near the gun when Corporal Fow found him, and the gun was within Perkins' reach. When asked if Perkins had a gun, Perkins reached for the rifle. These circumstances are sufficient to demonstrate that Perkins had the power to control the gun and the intent to do so. In addition, Corporal Fow credibly testified that both

Perkins and Isaiah admitted that Perkins had the gun for hunting. Further, while Perkins and Isaiah denied that Perkins possessed the gun, the jury found Corporal Fow's testimony to be credible. We may not disturb that finding as long as the record supports it. The evidence was sufficient to support the conviction and this claim is frivolous.

Our review of the record has revealed no other non-frivolous claims that could be raised. Therefore, we grant counsel's petition to withdraw and affirm Perkins' judgment of sentence.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/8/2015