J-S38034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| VAN EDWARD SCOTT, | : | |
| Appellant | : | No. 55 WDA 2018 |

Appeal from the PCRA Order November 29, 2017
in the Court of Common Pleas of Lawrence County
Criminal Division at No(s): CP-37-CR-0000516-2010

BEFORE:   BOWES, NICHOLS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 27, 2018**

Van Edward Scott (Appellant) appeals from the order entered November 29, 2017, denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

We provide the following factual and procedural history.  Appellant was sentenced to an aggregate term of 9 to 18 years' imprisonment following his convictions relating to the improper prescribing of narcotic drugs and to disposing of frozen or seized assets.

> Appellant is a medical doctor who ostensibly engaged in a pain management practice.  As a central part of that practice, [A]ppellant prescribed large dosages of narcotic opiate drugs to his patients.  During [A]ppellant's trial, the Commonwealth presented testimony from some of [A]ppellant's patients who

_____

* Retired Senior Judge assigned to the Superior Court.

typically described office visits as lasting five minutes or less and consisting of a brief, perfunctory examination, followed by the prescribing of large dosages of controlled substances.

*\*\**

The Commonwealth [] presented expert medical testimony [ from Stephen Thomas, M.D.] to the effect that [A]ppellant's prescribing of controlled substances was outside of accepted treatment principles.

*Commonwealth v. Scott*, 121 A.3d 1121-22 (Pa. Super. April 6, 2015)

(unpublished memorandum at 2-3) (citations to record omitted).

To rebut the testimony of the Commonwealth's expert, Appellant

presented the testimony of Frank Fisher, M.D., as an expert witness. Dr. Fisher maintains a physician's and surgeon's license in the State of California. Dr. Fisher received his undergraduate education from University of California-Berkeley[,] graduating with a degree in anthropology[,] and graduated from Harvard Medical School. He had several articles published and peer reviewed relating to the area of pain management. Dr. Fisher also performed several speaking engagements concerning the topic of pain management.

On direct examination, it was revealed that Dr. Fisher was charged with … murder, drug trafficking and conspiracy in the State of California in February of 1999, arising from his prescribing of opioids. Those charges were eventually dismissed by the Attorney General's office on the first day of trial according to Dr. Fisher. Following the dismissal of the criminal charges, the Board of Medicine of California raised issues regarding Dr. Fisher's ability to practice medicine. A resolution was reached in which Dr. Fisher agreed to three years of probation concerning his license to practice medicine, continuing medical education courses and he would undergo evaluations at the University of San Diego for mental and medical competency. Dr. Fisher was able to complete the three years of probation and evaluations without issue. At the time of trial, Dr. Fisher maintained an unrestricted license to practice medicine in California.

Dr. Fisher was admitted as an expert witness at trial. He testified that titration to optimal therapeutic effect for pain

management consists of gradually raising the dosage to where it is most effective and that method is necessary to effectively treat chronic pain. He disagreed with Dr. Thomas's testimony that [Appellant's] initial prescriptions to his patients containing large dosages failed to comply with the standards in the reasonable medical community as Dr. Thomas was basing his opinion from the total daily dosage as opposed to the dosage at each use. For example[,] Dr. Thomas stated that [] one patient received an initial dosage of 180 milligrams daily, which actually consisted of doses of 30 milligrams to be taken six times per day. Dr. Fisher deemed that starting point to be a safe and reasonable initial dosage. Moreover, Dr. Fisher felt that it was "nitpicking" for Dr. Thomas to criticize [Appellant] for failing to document every increment in the titration process. He also determined that Dr. Thomas's assessment that patients with chronic pain should start with a 5 milligram dosage of Oxycodone and be titrated to 10 milligrams by stating his belief that a patient with chronic pain would be undertreated by that dosage. Dr. Fisher ultimately opined [Appellant's] starting dosages and increments in titration complied with the standard of care in the area of pain management.

In Dr. Fisher's opinion, the dosages prescribed by [Appellant] were expected dosages and fell within the standard of care for treatment of individuals suffering from chronic pain. Dr. Fisher explained chronic pain can be a deadly disease if not properly treated, which was in direct conflict to Dr. Thomas indicating pain will not kill a patient, but addiction will.

Dr. Fisher's opinions were supported by a monograph written by Dr. Perry Fine at the University of Utah and Dr. Russell Portenoy at the Sloan Kettering Cancer Institute in New York City, which, he opined, is the best synopsis of the standard of care concerning the treatment of patients with chronic pain. According to Dr. Fisher, Dr. Fine and Dr. Portenoy state the elements of the standard of care for chronic pain are diagnosis and effective treatment reached through titration of medication to optimal therapeutic effect. Dr. Fisher explained [Appellant] complied with the standard of care in treating patients suffering from chronic pain with appropriate dosages of opioids.

Dr. Fisher further opined that [Appellant] was not engaged in diversion of prescription medications based upon the medical records from [Appellant's] practice and his removal of a patient

- 3 -

from treating with him for engaging in diversionary activities. Dr. Fisher recalled [Appellant] utilized a pain management contract with his patients to educate them about the type of treatment they would be receiving and the repercussions they faced if it is determined they are engaged in diversion of their prescription drugs.

On cross examination, Dr. Fisher indicated that he did not perform a residency or fellowship prior to entering the practice of medicine. Moreover, Dr. Fisher did not practice long term pain management from 1982 through 1992 as he was practicing general medicine. His license to practice medicine was suspended from 1999 until 2006 while his criminal charges were pending as a condition of his bail. Furthermore, in the decision and settlement with the Medical Board of California, Dr. Fisher admitted there was an evidentiary basis to discipline his license for gross negligence, repeated negligent acts and incompetence as stated in Section 2234 [of the] Business and Professions Code in California regarding his treatment of numerous patients. Counsel for the Commonwealth then engaged in a line of questioning concerning quotations issued by Dr. Portenoy indicating he was incorrect in the method of prescribing opioids for chronic pain and the risk of addiction for patients who receive long term treatment of opioids for pain management. Dr. Fisher responded to those quotes by explaining that Dr. Portenoy did not change his opinions he rendered concerning [Appellant's] treatment of his patients. However, Dr. Fisher explained that only 20 to 30 percent of his patients require pain management.

PCRA Court Opinion, 11/29/2017, at 6-9.

On June 24, 2013, a jury convicted [A]ppellant of six counts of prescribing controlled substances not in good faith, six counts of prescribing controlled substances outside of accepted treatment principles, and one count of prescribing controlled substances to a drug dependent person.[1] Appellant was also convicted of dealing in proceeds of unlawful activities, tampering with or fabricating physical evidence, and obstructing administration of law or other governmental function.[2] On October 29, 2013, [A]ppellant was sentenced to an aggregate term of 9 to 18 years' imprisonment.

_____
[1] 35 P.S. §§ 780–113(a)(14)(i), (a)(14)(iii), and (a)(13), respectively.

- 4 -

> [2] 18 Pa.C.S. §§ 5111(a)(2), 4910(1), and 5101, respectively.

**Scott**, 121 A.3d at 1121-22 (unpublished memorandum at 3-4) (citations to record omitted).

Appellant timely filed a direct appeal to this Court, and on April 6, 2015, this Court affirmed Appellant's judgment of sentence. **Id.** Our Supreme Court denied allowance of his appeal on December 17, 2015. **See Commonwealth v. Scott**, 128 A.3d 1206 (Pa. 2015). Appellant did not file a petition for writ of certiorari to the United States Supreme Court.

Appellant timely filed *pro se* his first PCRA petition on January 25, 2017, alleging several instances of ineffective assistance of trial counsel. The PCRA court appointed counsel, who filed an amended PCRA petition on May 1, 2017. Relevant to this appeal, Appellant argued that trial counsel was ineffective for failing to vet Dr. Fisher fully as an expert witness and deciding to use said expert at trial, and failing to investigate facts properly and review discovery with Appellant. Amended PCRA Petition, 5/1/2017, at 1-2. Following hearings spanning three days,[1] at which Appellant and two of

---

[1] The first hearing date related only to the appointment of counsel for Appellant.

his trial attorneys testified,[2] the PCRA court dismissed Appellant's PCRA petition on November 29, 2017.

Appellant timely filed a notice of appeal to this Court.[3] On appeal, Appellant claims he is entitled to relief because trial counsel gave false testimony at the PCRA hearings. Appellant's Brief at v.

We begin with our standard of review.

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

***Commonwealth v. Benner***, 147 A.3d 915, 919 (Pa. Super. 2016), *quoting*

***Commonwealth v. Perry***, 128 A.3d 1285, 1289 (Pa. Super. 2015). "We

are bound by a PCRA court's credibility decisions." ***Commonwealth v.***

_____

[2] Appellant was represented at trial by a team of three attorneys: Kevin Byers, Esquire, Eric Levin, Esquire, and J.J. Sandlin, Esquire. It appears that Attorney Byers passed away prior to the PCRA hearings. N.T., 5/11/2017, at 26.

[3] Appellant complied with Pa.R.A.P. 1925(b). The PCRA court complied with Pa.R.A.P. 1925(a) by issuing an opinion on January 29, 2018, that both addressed Appellant's issues on appeal and also incorporated by reference its opinion dated November 29, 2017. ***See*** PCRA Court Opinion, 1/29/2018, at 5.

*Stewart*, 84 A.3d 701, 708 (Pa. Super. 2013), *citing* **Commonwealth v. Johnson**, 51 A.3d 237, 242-43 (Pa. Super. 2012) (*en banc*) ("The PCRA court's credibility determinations, when supported by the record, are binding on this Court.") (citation and quotation marks omitted).

Appellant argues that his trial counsel gave false testimony at the PCRA hearings relating to the use of Appellant's expert witness and trial counsel's investigation and review of discovery. Appellant's Brief at v. According to Appellant, trial counsel testified falsely at the PCRA hearings when trial counsel stated that he had contacted other experts to serve as witnesses at Appellant's trial. Appellant's Brief at v, 7. Appellant also claims trial counsel gave false testimony when he stated that a prosecution witness was Appellant's office manager, but, according to Appellant, was actually a part-time employee and confidential informant, which trial counsel knew or should have known.[4] *Id.*

_____

[4] While Appellant couches his issues on appeal as challenges to the veracity of trial counsel's testimony at the PCRA hearings relating to his ineffective assistance of counsel claims, in the argument section of his brief it is clear that Appellant is also arguing that his trial counsel was ineffective. **Compare** Concise Statement of Matters Complained of on Appeal, 1/29/2018 and Appellant's Brief at v **with** Appellant's Brief at 8-13. Moreover, Appellant's brief does not comply with the Pennsylvania Rules of Appellate Procedure insofar as he failed to divide the argument into sections that correspond with the two issues he raised in his statement of questions involved. **See** Pa.R.A.P. 2119(a). Despite the foregoing, because Appellant's deficiency does not substantially impede our ability to perform appellate review, we will address the merits of Appellant's arguments. **See Thompson v. Thompson**, 187 A.3d 259 (Pa. Super. 2018) (finding
*(Footnote Continued Next Page)*

In addressing Appellant's challenges to the veracity of trial counsel's testimony at the PCRA hearings, the PCRA court found that Appellant had waived these claims,[5] but concluded that even if there were no waiver, Appellant's claims would still fail. PCRA Court Opinion, 1/29/2018, at 2-5. The PCRA court explained that it

> considered all of the testimony presented during the hearings on [Appellant's] PCRA petition and determined that the testimony provided by … [Appellant's] trial counsel, concerning pretrial preparations, reviewing evidence with [Appellant] prior to trial, his efforts to vet the expert witness presented at trial and his search for another expert witness was credible. In fact, [Appellant's] testimony failed to contradict much of [trial counsel's] testimony regarding those topics despite being provided the opportunity to testify following the completion of [trial counsel's] testimony. In his rebuttal testimony, [Appellant] merely explained [trial counsel] never reviewed the evidence discovered in his apartment with [Appellant]. In addition, [Appellant] explained that he did not have an opportunity to discuss the evidence pertaining to the confidential informant with [trial counsel] and, if he reviewed that evidence, he would have been able to determine the identity of said informant.
>
> [Appellant] was provided with a sufficient opportunity to listen to [trial counsel's] testimony and those were the only portions he took exception to on the record prior to filing his

_(Footnote Continued)_ _____

appellant's violations of Pa.R.A.P. 2119 did not substantially impede appellate review).

_____

[5] Here, the PCRA court concluded that Appellant waived these issues because he "failed to raise [them] prior to serving his concise statement of matters complained of on appeal…." PCRA Court Opinion, 1/29/2018, at 2. In support, the PCRA court cites **Commonwealth v. May**, 31 A.3d 668 (Pa. 2011). In that case, May failed to file post-sentence motions with the trial court. Because there is no such procedure following dismissal of a PCRA petition by the PCRA court, **May** is inapposite and we disagree with the PCRA court that Appellant's claims are waived on this basis.

concise statement of matters complained of on appeal. Based upon a review of the entire record, there is no basis to assert the determinations by [the PCRA court] were unreasonable as [trial counsel's] testimony was credible concerning his representation of [Appellant] prior to and during trial, which included his assertions he reviewed the evidence with [Appellant] prior to trial as he was residing at [Appellant's] apartment and the discovery provided by the Commonwealth was present within the apartment during that time. [Appellant] was granted access to the discovery materials and could have reviewed it on his own to aid his counsel in preparation for trial. Thus, [the PCRA court's] determinations concerning the credibility of the witnesses and conflicts of evidence are supported by competent evidence and are reasonable based upon the record created concerning [Appellant's] PCRA petition.

*Id.* at 4-5 (unnecessary capitalization omitted).

Instantly, the PCRA court made credibility determinations in favor of the Commonwealth as to trial counsel's testimony, and we are bound by those credibility determinations as long as they are supported by the record. *See Stewart*, 84 A.3d at 708. We agree with the PCRA court that its determinations are supported by the record.[6] Bearing these credibility determinations in mind, we now consider whether counsel was ineffective.

_____

[6] *See* N.T., 5/11/2017, at 7-9 (Appellant's testimony that he did not ask trial counsel to replace or remove expert witness, and that he did not discuss with trial counsel any problems he had with using expert), *id.* at 17 (Appellant's testimony that he "didn't take exception to" expert witness testifying on his behalf, and that, when asked who he would have retained instead of expert, he was "not sure"), *id.* at 28-29 (trial counsel's testimony that Appellant and his trial attorneys met prior to trial and were aware of and discussed expert witness's criminal charges); *see also* N.T. 10/31/2017, at 13 (trial counsel's testimony that he had previously worked with the same expert, that Appellant never recommended to him that expert not be used, and that trial counsel had difficulty finding an expert), *id.* at
*(Footnote Continued Next Page)*

We presume counsel is effective. ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). To overcome this presumption and establish an ineffective assistance of counsel claim, a PCRA petitioner must prove, by a preponderance of the evidence: "(1) the underlying legal issue has arguable merit; (2) that counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the [appellant] from counsel's act or omission." ***Commonwealth v. Johnson***, 966 A.2d 523, 533 (Pa. 2009) (citations omitted). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 533 (citation and internal quotation marks omitted). A

*(Footnote Continued)* ―――――――――

14-16 (trial counsel's testimony that he had discussions with an alternative expert from Florida, who was critical of Appellant and declined to testify on his behalf, that he had tried unsuccessfully to obtain an alternative expert from Pittsburgh, that Appellant knew prior to trial about expert's criminal charges, that he discussed with Appellant that expert would be a good witness because it would show the jury "what happens to doctors when they're wrongfully accused," that he and Appellant both wanted to try to find a different expert and that this expert was the "fallback," and that expert testified competently on direct examination at trial, but his credibility was harmed on cross-examination due to questioning about his criminal charges), ***id.*** at 22 (trial counsel's testimony that he lived in Appellant's apartment during trial, that Appellant was actively involved in reviewing discovery evidence with him, and that he and Appellant were prepared before trial to cross-examine Commonwealth's confidential informant), ***id.*** at 32-3 (Appellant's testimony that trial counsel never pointed out to him evidence relating to a confidential informant, that he did not have an opportunity to discuss evidence relating to a confidential informant with trial counsel, and that if he had been shown the evidence relating to a confidential informant, he would have been able to decipher who informant was).

claim will be denied if the petitioner fails to meet any one of these requirements. ***Commonwealth v. Springer***, 961 A.2d 1262, 1267 (Pa. Super. 2008). This Court may affirm the PCRA court's order on any basis even if it is different from that of the PCRA court. ***Commonwealth v. Heilman***, 867 A.2d 542, 544 (Pa. Super. 2005).

With respect to Appellant's claim that trial counsel failed to vet fully Appellant's expert witness and obtain a new expert, the PCRA court explained that

> [w]hen a petitioner claims ineffective assistance of counsel for failure to call a witness, the petitioner bears the burden of establishing that witness existed and was available to testify. ***Commonwealth v. Chmiel***, 612 Pa. 333, 387, 30 A.3d 1111, 1143 (2011). The petitioner must also demonstrate counsel was aware of or had a duty to know the witness and the witness was willing and able to appear. ***Id.*** This standard also applies to trial counsel's failure to call an expert witness. Furthermore, "[t]rial counsel need not introduce expert testimony on his client's behalf if he is able to effectively cross-examine prosecution witnesses ad elicit helpful testimony." ***Id.***, 612 at 388, 30 A.3d at 1143 (citing ***Commonwealth v. Marinelli***, 570 Pa. 622, 810 A.2d 1257, 1269 (2002)).
>
> ***
>
> … [T]rial counsel recognized the Commonwealth's case was based upon the expert testimony of Dr. [] Thomas as he explained [Appellant] failed to prescribe opioids in accordance with the standards of the relevant medical community and he failed to adhere to proper practices to eliminate diversion of the prescription opioids. In response, trial counsel obtained the services of Dr. [] Fisher to testify as a rebuttal witness to the Commonwealth's expert witness. However, [Appellant] contends trial counsel was ineffective for failing to properly vet Dr. Fisher based upon Dr. Fisher having been charged with similar offenses as [Appellant] and trial counsel failed to procure another expert witness better suited to contest the testimony of Dr. Thomas. At

the hearing on this PCRA petition, [Appellant] stated he was not sure who [sic] he would have retained as an expert witness to replace Dr. Fisher. Additionally, [Appellant] testified that he did not make a request [to his trial counsel] to replace Dr. Fisher prior to trial.

*** 

Moreover, [trial counsel] discussed utilizing Dr. Fisher as an expert witness with [Appellant], who did not voice an objection to Dr. Fisher testifying at trial. [Trial counsel] explained that Dr. Fisher was the only expert who was available to testify on behalf of [Appellant. Trial counsel] contacted another expert witness from Florida, who declined to testify at trial as he was very critical of [Appellant]. Similarly, [trial counsel] attempted to procure expert testimony from a physician located in Pittsburgh, Pennsylvania, who also declined to testify on [Appellant's] behalf. … Dr. Fisher was the only expert witness known to trial counsel who expressed a willingness to testify on [Appellant's] behalf. Dr. Fisher was able to adequately explain titrating to effect and provided a reasonable explanation as to the method utilized by [Appellant] and that said methods complied with the standards of the medical community for prescribing opioids to treat patients with chronic pain.

*** 

[Appellant] argues that trial counsel was ineffective, in accordance with *Hinton* [*v. Alabama*, 571 U.S. 263 (2014)], for calling Dr. Fisher to testify at trial as opposed to obtaining the testimony of another qualified expert. However, *Hinton* does not provide a basis for relief for [Appellant] as the [U.S.] Supreme Court held that trial counsel was ineffective for failing to obtain a competent and qualified expert witness based upon his failure to review the appropriate Alabama statute, which would have allowed him to be reimbursed for funds necessary to obtain a qualified expert witness. It is important to recognize that trial counsel in *Hinton* was aware the expert witness he presented at trial was not properly qualified to rebut the testimony of the State's expert witness, which is not the situation in the current matter as [Appellant's] trial counsel did not acknowledge that Dr. Fisher lacked the proper qualifications to rebut the testimony of Dr. Thomas. The [U.S.] Supreme Court specifically refused to require the courts to compare the qualifications of experts chosen to an expert that may have been hired. *Id.* [at 275]. [Appellant] is now requesting [the PCRA

court] perform a comparison of Dr. Fisher with some unidentified expert that may exist to determine whether trial counsel was ineffective without identifying or presenting testimony from another expert that was available and willing to testify on his behalf at trial.

This case is similar to [**Commonwealth v.**] **Rivera**, [108 A.3d 779 (Pa. 2014)], where trial counsel provided the testimony of an expert witness who was available and willing to testify on behalf of [Rivera]. [Here, i]t is completely reasonable for trial counsel to rely upon information and testimony provided to him by Dr. Fisher. Trial counsel will not be held to be ineffective for falling to consult with another expert and provide said expert at trial merely in hopes of obtaining a more favorable conclusion. This rationale is even more persuasive in this case than in **Rivera** as [Rivera] was able to identify and produce a report from an expert willing to testify more favorably in his defense[, while Appellant] in the current case has not identified nor presented any indication an expert witness exists to provide testimony more favorable than the testimony provided by Dr. Fisher.

PCRA Court Opinion, 11/29/2017, at 21, 27-31 (unnecessary capitalization omitted). We agree with the PCRA court's determination that there is no merit to Appellant's ineffective assistance of counsel claim regarding his trial counsel's failure to vet fully Appellant's expert witness and obtain a new expert. Thus, we conclude the PCRA court properly dismissed this claim.

As for Appellant's claim regarding trial counsel's failure to investigate adequately facts and review discovery with him, we likewise agree with the PCRA court that this claim is without merit.

… [T]he testimony demonstrates that [trial counsel] met with [Appellant] on numerous occasions, even residing at [Appellant's] apartment prior to trial. The discovery provided by the Commonwealth was present at [Appellant's] apartment and [trial counsel] explained that he reviewed said discovery with [Appellant] as [trial counsel] was residing with [Appellant] prior to and during trial. [Trial counsel] emphasized [Appellant] was

- 13 -

actively involved in reviewing and analyzing the discovery and [trial counsel] believed they reviewed all of the potential exculpatory evidence. [The PCRA court] finds [trial counsel's] testimony credible in this regard. Therefore, [Appellant] is not entitled to a new trial as [trial counsel] frequently conferred with [Appellant] and properly reviewed discovery with him.

PCRA Court Opinion, 11/29/2017, at 34-35. The PCRA court's determination is supported by the record, **see** note 6, **supra**, and we discern no error in its dismissal of this claim.

Accordingly, we affirm the PCRA court's order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2018

- 14 -